2008 VT 45

## Rodney Chayer v. Ethan Allen, Inc., Travelers Insurance Company, et al.

[954 A.2d 783]

No. 06-124

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 11, 2008

*Duncan Frey Kilmartin* of *Rexford & Kilmartin*, Newport, for Plaintiff-Appellant.

*Carrie J. Legus* of *Legus and Bisson, PLC*, Montpelier, for Defendants-Appellees.

¶ 1. **Reiber, C.J.** Plaintiff Rodney Chayer appeals from the trial court's grant of defendants' motion to dismiss his claim for civil damages arising out of a workplace accident for which he had previously received workers' compensation benefits. We affirm.

¶ 2. In 1996, plaintiff was employed at the Ethan Allen furniture manufacturing plant in Orleans, Vermont. As part of his employment, he operated a double-end tenoning machine. The machine includes a moving "table" — essentially a conveyor belt — on which wooden workpieces rest as they move toward the machine's saw blades. The workpieces are held in place from above by rubber pads that descend automatically. Plaintiff inadvertently

placed his hand on the belt while cleaning up some debris near the machine. His hand was caught in a "pinch point" and was drawn into and amputated by the blades. His attempt to flip the machine's shutoff switch was to no avail.

¶ 3. Plaintiff's injury was compensable under the workers' compensation law, 21 V.S.A. §§ 601-711, and plaintiff has received ongoing compensation under the provisions thereof. In addition to his workers' compensation recovery, plaintiff sought civil damages against Ethan Allen, Inc., twelve named co-employees, Travelers Insurance Company, and the "Employer/Employee/Insurance Safety Committee of Ethan Allen, Inc." The civil complaint alleged that at least three of the named co-employees were members of the committee, along with Ethan Allen and Travelers. In Count I, plaintiff sought a multi-faceted declaratory judgment which, among other things, plaintiff hoped would construe all of the subsections of § 624, including subsection (h). That subsection, read literally and in isolation, would appear to allow damage claims against such a committee "in the case of gross negligence or willful misconduct." In Count II, labeled "Tort Action Against Co-Employees," plaintiff alleged that all of the defendants, including his co-employees, "by their malicious, willful, intentional, knowing, reckless, grossly negligent, and negligent failure to fulfill their duties to [plaintiff], caused the amputation of his right hand above the wrist, and the consequent damages and injuries which he has received." Count III was titled "Liability for Conducting Work Place Inspections — 21 V.S.A. § 624(h)." In this count, plaintiff alleged that the committee and its members had a duty to conduct workplace inspections, to ensure compliance with state and federal workplace-safety regulations, and to pursue remedial safety measures when appropriate. Count III further alleged that defendants "maliciously, willfully, knowingly, intentionally, recklessly, grossly negligently, and negligently failed to make the [double-end tenoning] machine safe for the use for which it was supplied, while knowing in detail" what measures they could have taken to prevent harm to plaintiff. Next, in Count IV, plaintiff generally realleged the assertions in Count III with specific reference to the co-employee members of the safety committee. Finally, plaintiff alleged in Count V that defendants had intentionally inflicted emotional distress on him by failing to take the remedial measures detailed above.

¶ 4. All defendants except Travelers responded to the complaint with a motion to dismiss, claiming that the complaint failed to

state a claim upon which relief could be granted. V.R.C.P. 12(b)(6). Defendants asserted generally that workers' compensation benefits were plaintiff's exclusive remedy. More specifically, defendants claimed that plaintiff had failed to allege that any defendant had breached any duty other than the employer's nondelegable duty to provide a safe workplace, and that this breach of that duty was not actionable in tort due to the exclusive-remedy provisions of the workers' compensation law. The superior court agreed and granted defendants' motion.

¶ 5. On this appeal, plaintiff raises three arguments. First, he contends that 21 V.S.A. § 624(h) authorizes a tort action against an "employer-employee safety committee" when the committee engages in gross negligence or willful misconduct.[1] Second, he contends that his complaint stated a claim upon which relief may be granted under that standard, and therefore should have survived defendants' motion to dismiss. Third, plaintiff argues that he has stated a claim against co-employees for negligence, even if we conclude that § 624(h) does not provide a "third party" avenue for relief. We consider the claims in turn.

I.

¶ 6. We will affirm the trial court's grant of a motion to dismiss only when there are no facts or circumstances alleged in the complaint that would entitle the nonmoving party to relief. *Amy's Enters. v. Sorrell*, 174 Vt. 623, 623, 817 A.2d 612, 615 (2002) (mem.). For purposes of evaluating the motion, we take the following facts — and all reasonable inferences to be drawn from them — as true. See *Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶ 5, 178 Vt. 51, 869 A.2d 103.

¶ 7. Defendant Ethan Allen, Inc. was plaintiff's employer at the time of the accident. Prior to the accident, Ethan Allen had an employer-employee safety committee as that term is used in 21 V.S.A. § 624(h). The Ethan Allen defendants were present at a meeting at which the machine that amputated plaintiff's hand was characterized by plaintiff and others as inherently dangerous and inadequately protected by safety devices, in particular by brakes

---

[1] Plaintiff has abandoned on appeal his claim that any defendant engaged in *intentional* misconduct, stating that "[t]his is not a case of the Defendants having a specific purpose or desire to injure Rodney Chayer, or knowing to a substantial certainty that their actions or inactions would injure this particular Plaintiff."

and guards. The operation switches, including the shutoff switch, were located in such a way as to pose a danger. One defendant had found, months before the accident, that when the machine's shutoff switch was tripped the saw blades took more than two minutes to come to a complete stop. This defendant informed several other defendants of this finding, but none took any action in response. In the six months preceding the accident, employees other than plaintiff provided written complaints to defendants about the dangers posed by the tenoning machine. None were acted on. Two weeks before the amputation, plaintiff and a co-worker delivered a written work order requesting new brakes for the machine to the maintenance department. Again, no action was taken.

¶ 8. Based on these alleged facts, plaintiff claimed that defendants had all breached the following duties owed to plaintiff:

A.  The duty to provide a safe work place;

B.  The duty to provide adequate safety devices on the machine on which [plaintiff] was injured;

C.  The duty to maintain the machine and its safety devices, so that the machine was safe for operation;

D.  The duty to timely inspect the machine for its safety hazards and defects, and to eliminate those hazards and correct those defects, which caused or contributed to its defective and unsafe condition on September 9, 1996;

E.  The duty to fill or cause to be filled outstanding requests by Plaintiff and other co-employees that proper safety devices be installed, that already existing safety devices that had failed be repaired and consistently maintained;

F.  That State and Federal regulations and laws concerning the safety of work places and the machine in question be consistently observed and followed[;]

G. To ensure that the double end [tenoning] machine on which [plaintiff] was working, was not defective, dangerous, unguarded, unbraked and unsafe[;]

H. To regularly inspect and take remedial action in order to prevent the machine from becoming unreasonably unsafe, defective, dangerous, unbraked, unguarded and maintained in such a manner as to become dangerous[;]

I. To determine if the machine, which amputated [plaintiff's] right wrist and hand, would endanger him by its probable use in the manner for which it was intended to be used, and upon said determination, to exercise immediate and reasonable care and to take all necessary steps to make the machine safe for the use for which it was supplied to [plaintiff], or in the alternative, prevent its use by [plaintiff] until it was placed in a safe condition for use[;]

J. To have competent engineers and other persons trained in safety and human engineering, for the purpose of inspecting [the] machine on which [plaintiff] was injured, and engineering and design appropriate safety devices in order to make the machine safe for its intended use.

¶ 9. On appeal, plaintiff first contends that 21 V.S.A. § 624(h), as amended in 1994, authorizes a third-party action by an injured employee against an employer-employee safety committee when the committee engages in gross negligence or willful misconduct that proximately causes injury to the employee. The construction of the statute presents a question of law, which we review de novo. *In re Dep't of Bldgs. & Gen. Servs.*, 2003 VT 92, ¶ 8, 176 Vt. 41, 838 A.2d 78.

¶ 10. When interpreting statutes, we will generally apply the plain language of the enactment except when the language itself is ambiguous. *Farris v. Bryant Grinder Corp.*, 2005 VT 5, ¶ 8, 177

Vt. 456, 869 A.2d 131. However, where the plain language is unambiguous but would lead to an absurd result that the Legislature cannot have intended, we will look beyond the language of the statute to determine the Legislature's intent. See *Judicial Watch, Inc. v. State*, 2005 VT 108, ¶ 16, 179 Vt. 214, 892 A.2d 191 (noting that the absurd-results doctrine "permits an otherwise reasonable construction when a plain reading of the statute 'would produce a result demonstrably at odds with any conceivable legislative purpose' " (quoting *Taylor-Hurley v. Mingo County Bd. of Educ.*, 551 S.E.2d 702, 710 (W. Va. 2001)).

¶ 11. The conflict here arises between four statutory provisions in Title 21: § 622, subsections (a) and (h) of § 624, and § 223. The first is the exclusivity provision of the workers' compensation law, which provides:

> Except as provided in subsection 618(b) and section 624 of this title, the rights and remedies granted by . . . this chapter to an employee on account of a personal injury for which he is entitled to compensation under . . . this chapter shall exclude all other rights and remedies of the employee . . . .

21 V.S.A. § 622. Section 622 thus bars civil recovery for injuries compensable under the workers' compensation laws except as provided in § 618(b) and § 624.[2] Section 624 is central to our task here. Subsection (a) of § 624 provides as follows:

> Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person *other than the employer*, the acceptance of compensation benefits . . . shall not act as an election of remedies, but the injured employee or the employee's personal representative may also proceed to

---

[2] Section 618 allows civil suits against employers who fail to secure workers' compensation insurance or provide other security as required by § 687. That section is not directly pertinent to this appeal, as there is no allegation that plaintiff's employer failed to secure workers' compensation coverage. Plaintiff argues only that the fact that § 618 authorizes civil suits against employers who fail to comply with § 687 militates in favor of construing § 624(h) as authorizing civil suits against employer-employee safety committees. We find the argument conclusory and unconvincing.

enforce the liability of such third party for damages in accordance with the provisions of this section. . . .

*Id.* § 624(a) (emphasis added). Subsection (h) of § 624 provides that:

> The injured employee or the employee's personal representative shall be prohibited from commencing a civil action to enforce liability against the workers' compensation insurance carrier for conducting workplace inspections, *or an employer-employee safety committee* except in the case of gross negligence or wilful misconduct.

*Id.* § 624(h) (emphasis added).

¶ 12. Finally, 21 V.S.A. § 223(a) mandates that employers shall provide "a place of employment . . . free from recognized hazards that are causing or are likely to cause death or significant physical harm to . . . employees." As we have repeatedly noted, this duty to provide a safe workplace is not delegable. See, e.g., *Gerrish v. Savard*, 169 Vt. 468, 473, 739 A.2d 1195, 1199 (1999) ("An employer in Vermont also has a nondelegable duty to provide a safe work place and safe tools and equipment."). The duty is nondelegable in the following sense: " 'the employer cannot escape liability for breach either by purporting to delegate to another the duty itself, or by delegating merely the performance of the duty.' " *Id.* at 474, 739 A.2d at 1200 (quoting *Rounds v. Standex Int'l*, 550 A.2d 98, 101-02 (N.H. 1988)).

¶ 13. The plain language of § 624(h) arguably allows injured employees who have received workers' compensation benefits also to proceed in tort against an "employer-employee safety committee" when such a committee is either grossly negligent or has committed willful misconduct. This statutory language, however, is in direct conflict with our prior holdings construing the bar to recovery from employers. But the statute nowhere defines "employer-employee safety committee," nor does it specify how such an entity might be sued as a practical matter. Central to this appeal is how § 624(h), if it allows suit "against the committee," could also authorize suit against the members of the committee, who in this case allegedly include the employer and the named individual defendants. Plaintiff contends that subsection (h) — by its plain language — authorizes such suits.

¶ 14. If § 624(h) authorizes tort suits against employers via their safety committees when those committees are grossly negligent or engage in willful misconduct, it amounts to a serious recalibration of the balance struck in the Workers' Compensation Act. That balance, in general terms, is that "the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy." *Lorrain v. Ryan*, 160 Vt. 202, 214, 628 A.2d 543, 551 (1993). As we stated in *Lorrain*, "[t]he corollary is that employees have a similar quid pro quo with each other: they give up the right to sue each other" and in exchange receive the benefits provided by workers' compensation. *Id.* Accordingly, as we noted in *Garrity v. Manning*, under the Workers' Compensation Act "an injured employee who has received workers' compensation benefits may not bring a common-law negligence action against the employer, but may bring such an action against *any other party*." 164 Vt. 507, 509, 671 A.2d 808, 809 (1996) (emphasis added).

¶ 15. Under plaintiff's construction of § 624(h), the Legislature would have, without explicitly defining what an employer-employee safety committee is, nonetheless treated it as a liable "other party" that is legally distinct from the employer or co-employees it comprises. Employers and co-employees are not otherwise liable in tort for workplace injuries arising from the failure to maintain a safe workplace, see *Gerrish*, 169 Vt. at 474, 739 A.2d at 1200, and plaintiff's construction would therefore render the statute internally inconsistent. We are reluctant to construe the vague language of subsection (h) as so curtailing the scope of the employer immunity upon which the entire workers' compensation scheme is premised.

¶ 16. That plaintiff's construction would have this effect is inherent in the nature of an employer-employee safety committee, under any plausible definition of the term. Absent a statutory definition imbuing such committees with an independent legal status, they are simply a subpart of the employer and they comprise individuals: either employees or employers.[3] Moreover, as their name implies, such committees are presumably charged

---

[3] For purposes of the Workers' Compensation Act, a workers' compensation insurer is an "employer." 21 V.S.A. § 601(3) ("If the employer is insured, 'employer' includes the employer's insurer so far as applicable.").

with performing the employer's nondelegable duty to maintain a safe workplace.

¶ 17. Plaintiff's plain-language reading of subsection (h) would also create a strong disincentive for employers considering establishing employer-employee safety committees. An employer without such a committee would be liable in tort only for intentional misconduct, while an employer who established a committee would be liable for gross negligence or willful misconduct. See *Mead v. W. Slate, Inc.*, 2004 VT 11, ¶ 19, 176 Vt. 274, 848 A.2d 257. Indeed, in light of the lack of a statutory definition of "employer-employee safety committee," plaintiff's construction of § 624(h) would discourage employers from engaging in any conduct that might be construed as establishing — or even implying the existence of — such a committee. That disincentive is directly contrary to the Legislature's express imposition on employers of the nondelegable duty to maintain a safe workplace. 21 V.S.A. § 223(a). We think it unlikely that the Legislature intended, by a single clause in § 624(h), to so deeply undermine the remedial goals of § 223 and the Workers' Compensation Act.

¶ 18. Plaintiff next contends that the legislative history of the 1994 amendment to § 624(h) compels the conclusion that the Legislature intended to "add a new cause of action, based upon gross negligence, against 'an employer-employee safety committee.'" (Emphasis omitted.) We do not agree. Even assuming that any legislative history would suffice to override the policy concerns reflected in the Workers' Compensation Act, the history plaintiff offers provides little support for the conclusion he would have us draw. Plaintiff's argument, as to § 624, amounts to a simple *ipse dixit* purportedly based on the plain language of the enactment. Noting that the proposed version of subsection (h) mentions an entity, the "employer-employee safety committee," that is not elsewhere defined, plaintiff concludes that it is indisputable from the language of the legislation that the Legislature intended to create a "new 'ambit of liability' for the employer and fellow employees, a/k/a 'employer-employee safety committee.'" In one fell swoop, according to plaintiff, the Legislature not only created a wholly undefined new entity, but also delegated to it the very duty that the Legislature has elsewhere explicitly imposed on the employer itself. Further, according to plaintiff, the committee — and any employer so foolhardy as to create one, or employee so rash as to serve on one — will be rewarded for its pains by

exposure to heightened liability.[4] While we acknowledge that the language of subsection (h) makes this reading superficially plausible, we do not believe that the Legislature intended to change so much with so little.

¶ 19. Plaintiff's reliance on post-1994 amendments also does not advance his cause. Plaintiff contends that the Legislature's intent in subsection (h) must be viewed in light of the Legislature's later enactment of subsections (j) and (k) in § 624. He argues that, in passing subsections (j) and (k) of § 624 in 2004, the Legislature made clear that its intent in subsections (h), (j), and (k) was to "incentivize" employers "to carry out the responsibilities of ensuring workplace safety" by creating safety committees. See 2003, No. 132 (Adj. Sess.), § 15. As noted above, however, subsection (h), if construed as plaintiff would have it, would not provide any incentive to employers to establish safety committees. Quite the opposite, it would create a disincentive by increasing employers' exposure to liability if they do create such committees.

¶ 20. Nor do the *Derosia* cases convince us to adopt plaintiff's construction. In the most pertinent of the three, *Derosia v. Duro Metal Products Co.* (*Derosia I*), we held that "if a workers' compensation carrier undertakes to provide, rather than pay for, benefits and services, it should be liable in tort as 'a person other than the employer.'" 147 Vt. 410, 413, 519 A.2d 601, 604 (1986) (quoting 21 V.S.A. § 624). We noted, in support of this holding, that "it is not of the essence of the compensation process that the carrier should step out of its fundamental role as financial guarantor and payor and go into the safety inspection service or medical clinic business directly." *Id.* (quotation omitted). This interpretation, as we stated then, "gives content to the phrase 'so far as applicable' [in § 601(3),] as it recognizes that the insured and the insurer are to be treated as separate and distinct entities

---

[4] We note also that plaintiff's proposed "new ambit of liability" begs several questions concerning how a "committee" might be held liable as a practical matter. Would members be individually liable? If so, would dissenting or abstaining members be liable for the majority's decisions? Would a committee that might have no power to control corporate spending nonetheless be liable for failing to coax open the corporate purse-strings for particular safety projects? We think it unlikely that the Legislature intended to create such an ill-defined new area of liability merely by mentioning the "employer-employee safety committee" in § 624(h).

under certain circumstances."[5] *Id.* at 413-14, 519 A.2d at 604; see 21 V.S.A. § 601(3) ("If the employer is insured, 'employer' includes the employer's insurer so far as applicable."). Put another way, we held in *Derosia I* that employers and insurers, though statutorily identical for most purposes, are not treated the same in all circumstances under the dual-liability provisions of the Workers' Compensation Act. Insurers undertaking workplace safety inspections assume a personal duty apart from the employer's nondelegable duty to maintain a safe workplace.

¶ 21. While it is plain from the language of subsection (h) that the Legislature intended to narrow our holding in *Derosia I* to allow tort suits against workers' compensation insurers conducting workplace inspections only when they commit gross negligence or willful misconduct, the *Derosia* cases neither involved employer-employee safety committees nor discussed the standards under which such committees might be liable in tort for employee injuries. Nor does the logic of *Derosia I* compel the conclusion that an employer-employee safety committee conducting workplace inspections is a person "other than the employer" under 21 V.S.A. § 624(a). To hold otherwise would be inconsistent with the long-standing, unmodified provisions of the Workers' Compensation Act.

¶ 22. For the foregoing reasons, we hold that plaintiff may not maintain an action against an employer-employee safety committee or its employer and employee members for gross negligence or willful misconduct. We recognize that this construction of the statute is contrary to its plain language, but absent more explicit direction from the Legislature we cannot apply the plain meaning of the statute without contravening other statutory provisions. See *supra*, ¶ 9. We do not lightly depart from the plain

---

[5] The second two cases in the *Derosia* trilogy are only peripherally pertinent to the present appeal. See *Derosia v. Book Press, Inc.*, 148 Vt. 217, 222, 531 A.2d 905, 909 (1987) (holding that "[t]he express language of § 624(a) does not, as currently written, allow a loss of consortium claim by the spouse of an injured employee against a third party"); *Derosia v. Liberty Mut. Ins. Co.*, 155 Vt. 178, 187, 583 A.2d 881, 886 (1990) (holding that the evidence of insurance carrier's undertaking to conduct safety inspections was sufficient to support a jury verdict premised on negligent inspections). Neither case has an impact on our interpretation of the statutes at issue here.

meaning of a legislative enactment, but must do so in light of the conflict presented here.[6]

## II.

¶ 23. Plaintiff's final appeal issue is whether he stated a claim against co-employees for their negligence, notwithstanding our holding that their service on the committee does not expose them to any greater liability than they would otherwise have. Co-employees are not liable for breaching the employer's nondelegable duty to maintain a safe workplace, "including suitable machinery and tools." *Gerrish*, 169 Vt. at 474, 739 A.2d at 1200; see also *Garrity*, 164 Vt. at 510-11, 671 A.2d at 810. For a co-employee to be considered "someone other than the employer" and thereby liable under § 624(a), the co-employee "must *not* be involved in performing a nondelegable duty of the employer and must *not* be exercising managerial prerogatives — because both of these activities indicate that the individual is acting as an employer." *Gerrish*, 169 Vt. at 474, 739 A.2d at 1200.

¶ 24. Here, plaintiff's allegations, numerous though they are, allege nothing beyond a breach of the employer's nondelegable duty to maintain a safe workplace. Briefly summarized, plaintiff alleged that the co-employee defendants breached the duties to (A) provide a safe workplace, (B) provide adequate safety devices on the machine, (C) maintain the machine, (D) timely inspect the machine and eliminate hazards relating to it, (E) comply with requests by plaintiff and other employees to make the machine safe, (F) observe and follow state and federal safety regulations and laws, (G) ensure that the machine was "not defective, dangerous, unguarded, unbraked and unsafe," (H) inspect and repair the machine regularly to prevent it from becoming unsafe, (I) determine if the machine was dangerous and, if such a determination were reached, take steps either to make it safe or prevent its use, and (J) retain competent engineers and others to inspect the machine and design safety devices in order to render it safe. See *supra*, ¶ 8, where the allegations are reprinted in full.

¶ 25. Allegations (B) through (J) allege nothing that is not fairly subsumed within allegation (A): the duty to maintain a safe

---

[6] Because we disagree with plaintiff's construction of § 624(h), we do not reach his second contention on appeal: that the complaint states a claim for which relief can be granted based on the allegations of gross negligence or willful misconduct.

workplace. That duty inures to the employer alone, and cannot be delegated. The trial court properly dismissed plaintiff's claims against the co-employees.

*Affirmed.*