2009 VT 36

# In re Jason Clark Miller

[975 A.2d 1226]

No. 07-254

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed April 3, 2009

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Petitioner-Appellant.

*David W. Gartenstein*, Windham County Deputy State's Attorney, Brattleboro, for Respondent-Appellee.

¶ 1. **Skoglund, J.** Petitioner appeals from the superior court's denial of his petition for post-conviction relief. He argues that his petition should have been granted because: (1) he did not knowingly and voluntarily plead guilty to four "failure to appear" violations under 13 V.S.A. § 7559(d); and (2) he received ineffective assistance of counsel. We reverse.

¶ 2. The record indicates the following. In May 2004, petitioner was arrested for driving under the influence, sixth offense (DUI-6); driving with a suspended license, second offense (DLS-2); and providing false information to a police officer. At the time, petitioner was also on probation for committing welfare fraud. Petitioner was released on conditions, one of which required him to check in daily at the Brattleboro police station. Petitioner repeatedly failed to check in as ordered, and he was charged with numerous counts of failure to appear under 13 V.S.A. § 7559(d).

¶ 3. In December 2005, petitioner and the State entered into a written plea agreement, which was accepted by the court following a Vermont Rule of Criminal Procedure 11 colloquy with petitioner. Pursuant to the agreement, petitioner pled guilty to DUI-6, providing false information to police, and four failure-to-appear charges, and the State dismissed the DLS-2 charge and nine additional counts of failure to appear. Petitioner agreed that his probation for welfare fraud would be revoked and the underlying sentence of one to three years to serve imposed. Petitioner also

agreed to a sentence of three to five years on the DUI-6 conviction, to be served consecutively. In addition, petitioner agreed to serve zero to twelve month sentences for each of the four failure-to-appear convictions, to be served concurrently with each other, but consecutively with the other sentences. Finally, petitioner agreed to serve three to six months on the false information conviction concurrently with the other sentences. As indicated in the plea agreement, petitioner received an overall sentence of four to nine years to serve.

¶ 4. Several months thereafter, petitioner filed a pro se petition for post-conviction relief. Counsel was appointed and in an amended petition petitioner argued, among other things, that the trial court should not have accepted his guilty pleas to the charges of failure to appear because his failure to report to the police station did not constitute a violation of 13 V.S.A. § 7559(d). According to petitioner, there was no factual basis for the charges, and thus his pleas could not have been knowingly and voluntarily made, and his counsel was ineffective for allowing him to plead guilty.

¶ 5. The State moved for summary judgment, and petitioner filed a cross-motion for summary judgment. In a written order, the court granted summary judgment to the State. It explained that 13 V.S.A. § 7554 authorized a judicial officer to release a person charged with an offense and awaiting trial, and to impose conditions on that release. Subsections 7559(d) and (e), noted the court, provided the sanctions for violations of conditions of release. Subsection (e) provided a general sanction for any violation of a condition of release, with a maximum penalty of a $1,000 fine or imprisonment for six months or both. Subsection (d) addressed more specifically a violation of a condition of release that required the released person to "appear at a specified time and place in connection with a prosecution for an offense," and it carried a greater maximum penalty of a $5,000 fine or imprisonment for two years or both. The court found that a violation of the type addressed in subsection (d) was referred to as a "failure to appear."

¶ 6. Petitioner contended that the condition requiring him to check in daily at the police department was not a condition requiring him to appear at a specified time and place "in connection with a prosecution for an offense." According to petitioner, violations of § 7559(d) should be limited to appearances,

such as appearances in court, that would directly move a prosecution forward.

¶ 7. The court rejected this interpretation, finding it at odds with the plain language of the statute. The court explained that the very purpose of the daily check-in requirement was to ensure that petitioner remained subject to the physical jurisdiction of the court until the prosecution was concluded. According to the court, this made it a requirement "in connection with a prosecution" within a common-sense understanding of those words. Moreover, the court reasoned, the Legislature could have easily defined the failure-to-appear offense more narrowly, but it did not do so, instead employing very broad language. The court also questioned whether petitioner was prejudiced by pleading to the wrong offense; the court found it apparent from the plea hearing that the parties sought to achieve a particular overall prison term for the full package of criminal behavior at issue, and noted that the sentencing court could have easily produced the same result even if petitioner had been charged with violating § 7559(e) rather than § 7559(d). The court thus concluded that petitioner's petition failed as a matter of law, and it granted judgment to the State. This appeal followed.

¶ 8. On appeal, petitioner reiterates his assertion that there was an inadequate factual basis for his guilty pleas. He argues that when § 7559 is read together with § 7554, it is apparent that the Legislature intended to penalize general violations of conditions of release, including reporting or check-in requirements, under § 7559(e) and not § 7559(d). Petitioner maintains that § 7559(d) applies only in cases where a defendant fails to appear for a court proceeding, a mental or physical examination, or fails to appear to provide nontestimonial evidence. According to petitioner, because his failure to appear at the police station cannot establish the elements of the offense codified in § 7559(d), his pleas were not voluntary, and his counsel rendered ineffective assistance for advising him to plead guilty. We agree that petitioner's plea was not voluntary, and do not reach his ineffective-assistance claim.

■ ■ ¶ 9. We first address the trial court's conclusion that petitioner would not have been prejudiced by involuntarily pleading guilty to the wrong offense. It is settled law in this state that no prejudice need be shown to collaterally attack a guilty plea on the grounds that the trial court failed to ascertain that there was

a factual basis for the plea as required by Rule 11(f).[1] We announced this rule in *In re Dunham*, 144 Vt. 444, 451, 479 A.2d 144, 148 (1984); see also *State v. Cleary*, 2003 VT 9, ¶ 44, 175 Vt. 142, 824 A.2d 509 (Dooley, J., dissenting) (reciting rule). As stated in the Reporter's Notes, Rule 11(f) is intended to prevent the entry of false guilty pleas in situations where, for example, the defendant does not completely understand the elements of the charge or realize that he has a defense. Reporter's Notes, V.R.Cr.P. 11. At the heart of Rule 11(f) is the goal of preventing defendants from pleading guilty when the conduct they engaged in does not fall within the charge. *State v. Yates*, 169 Vt. 20, 25-26, 726 A.2d 483, 486-87 (1999) (citing *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). These grounds, of course, are the substance of petitioner's argument for post-conviction relief.

¶ 10. That the superior court even mentioned possible prejudice to petitioner may be due to confusion based on its recollection of *In re Hall* and *In re Bentley* — cases in which we held that a petitioner collaterally attacking a guilty plea must show prejudice when alleging only a technical violation of the Rule 11 procedures. *In re Hall*, 143 Vt. 590, 596, 469 A.2d 756, 759 (1983); *In re Bentley*, 144 Vt. 404, 410, 477 A.2d 980, 983 (1984); see also *In re Dunham*, 144 Vt. at 451, 479 A.2d at 148 (recognizing origin of rule). In *Hall* — in which a defendant sought to attack his guilty plea on the basis of technical Rule 11(c) violations — we observed that the defendant "[did] not allege that he was not in fact aware of the maximum and minimum penalties, and of his waiver of a jury trial . . . [or] assert that," if he was aware, "he would have chosen an alternative to a plea of guilty." 143 Vt. at 596, 469 A.2d at 759. And in *Bentley* — in which the attack was similarly premised on technical deficiency under Rule 11(c) — we held that "[t]o constitute prejudice . . . [the] defendant would have [had] to show that (1) he was unaware of the nature of the charges and the minimum and maximum penalties involved, and (2) this lack of understanding caused him to plead nolo contendere." 144 Vt. at 410, 477 A.2d at 983.

---

[1] Rule 11(f) provides: *"Determining Accuracy of Plea.* Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." V.R.Cr.P. 11(f).

 ¶ 11. However, petitioner's argument — that the conduct with which he was charged and which formed the basis of his Rule 11(f) colloquy with the trial court was not proscribed by the statute he was convicted of violating — is simply not a technical argument. We require no showing of prejudice to collaterally attack guilty pleas on Rule 11(f) grounds because a defendant's understanding of the elements of an offense as they relate to the facts goes directly to the voluntariness of his plea. *Dunham*, 144 Vt. at 451, 479 A.2d at 148. In *McCarthy*, 394 U.S. at 466, the Supreme Court of the United States observed that, "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." The requirement that the record affirmatively show facts to satisfy each element of the offense is, consequently, absolute. As we held in *Dunham*:

> [T]he record must affirmatively show sufficient facts to satisfy each element of an offense. The requirement of [Rule] 11(f) involves an understanding by the defendant that the conduct admitted violates the law as explained to him by the court. Absent this, no matter how perfectly the other parts of Rule 11 have been observed, we cannot find a voluntary plea. Unlike collateral review of alleged defects under [Rule] 11(c), which places a burden of proving prejudice upon the defendant, collateral attacks for defects under Rule 11(f) require no showing of prejudice.

144 Vt. at 451, 479 A.2d at 148; see also *In re Kasper*, 145 Vt. 117, 120, 483 A.2d 608, 610 (1984) (reciting the same).[2]

---

[2] Further, even if petitioner was required to show that he was prejudiced by the trial court's error, prejudice is manifest from this record. When petitioner and his attorney sat down at the plea-bargaining table with the State, petitioner had been charged with: (1) one count of DUI-6, 23 V.S.A. § 1210(d), carrying a maximum penalty of five years and/or a fine of $2,500; (2) one count of DLS-2, 23 V.S.A. § 674(b), carrying a maximum penalty of two years and/or a fine of $5,000; (3) one count of giving false information to a police officer, 13 V.S.A. § 1754(a), carrying a maximum penalty of one year and/or a fine of $1,000; and (4) thirteen counts of failure to appear, 13 V.S.A. § 7559(d), which collectively carried a maximum penalty of twenty-six years and/or a fine of $65,000. Pursuant to a violation-of-probation charge, petitioner was also facing a one-to-three-year sentence, with credit for time served, on a welfare-fraud conviction. In total, then, as charged, petitioner faced

■ ¶ 12. The federal courts of appeal are in accord that where the acts forming the basis of a defendant's guilty plea did not constitute the crime charged, the plea may not stand. See, e.g., *United States v. Peter*, 310 F.3d 709, 715 (11th Cir. 2002) (per curiam); *United States v. McKelvey*, 203 F.3d 66, 70 (1st Cir. 2000); *United States v. Garth*, 188 F.3d 99, 108-09 (3d Cir. 1999); *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998).

■ ¶ 13. With that basic premise in mind, we address the merits of petitioner's claim for post-conviction relief. The superior court concluded that the condition of release requiring petitioner to "report to [the] Brattleboro Police Department . . . and check in . . . daily by between 6-8 am," is a "condition that he appear at a specified time and place in connection with a prosecution" under 13 V.S.A. § 7559(d). According to the superior court, this is so because the reporting condition was imposed to keep petitioner within the court's jurisdiction during the pendency of the criminal proceedings. Because the judge presiding over the post-conviction-relief hearing was not the judge who imposed the condition, it is difficult to understand how that intent was determined, particularly given that the condition to report to the police department included a requirement that petitioner submit to testing for alcohol consumption and that the crimes charged involved drunk driving. Be that as it may, conditions of release, including those that restrict travel and impose curfews, for example, are intended to ensure the person's appearance at trial. *State v. Cardinal*, 147 Vt. 461, 464, 520 A.2d 984, 986 (1986) (stating that the policy underlying our bail statutes that allow imposition of various conditions of release, including monetary ones, is reasonably assuring the appearance of the person at trial).

■ ■ ¶ 14. We have long presumed that "all language in a statute or regulation is inserted for a purpose," *Slocum v. Dep't of*

---

maximum jail time of thirty-seven years, and a fine of up to $73,000. However, had petitioner been charged thirteen times under § 7559(e), the counts would have carried a maximum penalty of six and one-half years in prison and a fine of $13,000. Had petitioner been correctly charged, he would have faced a maximum of seventeen and one-half years in prison and fines of up to $21,000. In other words, the State's bargaining position would have been significantly weaker. We fail to see how it is possible that petitioner was not prejudiced by accepting a plea bargain when the penalty the court informed him he was facing was approximately twenty years and $50,000 greater than the one he would have faced if charged under the correct statute.

*Social Welfare,* 154 Vt. 474, 481, 580 A.2d 951, 956 (1990), and that we "must not allow a significant part of a statute to be rendered surplusage or irrelevant." *State v. Brennan,* 172 Vt. 277, 280, 775 A.2d 919, 921 (2001). Instead of allowing "in connection with a prosecution" to become surplusage, we should "strive . . . to give effect to [the] clause." *Slocum,* 154 Vt. at 481, 580 A.2d at 956. In this case, "in connection with a prosecution" should be read naturally and plainly to restrict § 7559(d) to a subset of § 7554 conditions specifying the time and place of appearances, such as court appearances, that directly advance a prosecution. The superior court's interpretation renders the phrase "in connection with a prosecution" irrelevant.

██ ██ ¶ 15. Moreover, the structure of § 7559 supports this interpretation. Where a specific statute isolates a range of conduct already covered by a general statute for different treatment, the Legislature generally signals this different treatment explicitly. See *Caledonian-Record Publ'g Co. v. Walton,* 154 Vt. 15, 25, 573 A.2d 296, 301 (1990) ("[T]he exception of a particular thing from the operation of a statute indicates that in the enacting legislature's opinion, the excepted matter would have been within the purview of the general provision, absent the exception." (quotation omitted)). For example, § 7559(f) provides that "[n]otwithstanding [V.R.Cr.P. 3]," warrantless arrest is permitted if an officer has probable cause to believe specific conditions of release have been violated. 13 V.S.A. § 7559(f). The Legislature did not internally cross-reference subsections 7559(d) and (e) because it regarded "conditions of release" and "appearance conditions" as related but mutually exclusive sets. This difference is illuminated by 13 V.S.A. § 7554, which governs the imposition of conditions of release. Under § 7554, a trial court may impose conditions of release if it determines that personal recognizance or an appearance bond "will not reasonably assure the appearance" of the accused in court. 13 V.S.A. § 7554(a)(1). Therefore, although the purpose of reporting to a police station every morning may be to ensure eventual appearance in court, failure to appear at the station is punishable under (e) while failure to appear in court is punishable under (d).

¶ 16. This understanding of the legislative intent behind the separation of subsections (d) and (e) is further supported by the special treatment given appearance conditions and other conditions of release in the surrounding bail statutes. Subsection 7559(f)

gives law enforcement officers the power of warrantless arrest if the enforcement officer has reason to believe that a person "failed *to appear at a specified time and place in connection with a prosecution* for an offense or has violated a *condition of release* relating to a restriction on travel or a *condition of release* that he or she not directly contact, harass or cause to be harassed a victim or potential witness." 13 V.S.A. § 7559(f) (emphasis added). Section 7575 enumerates situations in which the right to bail may be revoked, and distinguishes between violations of "condition[s] of release" not to intimidate or harass a victim or witness, *id.* § 7575(1), conditions of release the violation of which threatens the integrity of the judicial system, *id.* § 7575(3), and failures "to appear at a specified time and place ordered by a judicial officer," *id.* § 7575(4). The superior court's interpretation ignores this distinction.

¶ 17. Under the superior court's interpretation of § 7559(d), a defendant who, in violation of a condition of release, does not report to a police station for, say, an alcohol test, would be subject to a maximum penalty of two years in prison and/or a $5,000 fine, and could be arrested without a warrant under § 7559(f). On the other hand, a defendant who violates a restriction on travel, leaves the designated county, and who thus poses a real risk of flight, would still be subject to warrantless arrest, but would face a maximum penalty of only six months in jail and/or a $1,000 fine. Given our presumption against statutory interpretations that produce absurd results, *State v. Longley*, 2007 VT 101, ¶ 10, 182 Vt. 452, 929 A.2d 1028, we cannot countenance the imposition of a criminal penalty for not reporting that is more than *four times* greater than that for violating a travel restriction. A far more reasonable interpretation is that § 7559(d) punishes failures to appear in court — or at other proceedings that directly advance a pending prosecution — severely, and that § 7559(e) imposes lesser sanctions for violations of conditions of release restricting travel or harassment of victims or witnesses.

¶ 18. Both this Court and the Legislature consider a defendant's appearance at a court proceeding of paramount importance. "Appearance bond" is defined as money pledged to the court to be paid in the event "the person fails to appear at a court proceeding." 13 V.S.A. § 7576. "Bail" is any security pledged "to ensure that a person charged with a criminal offense will appear

at future court proceedings." *Id.*; see also *id.* (defining "secured appearance bond" and "surety bond"). Failing to appear in court is treated so seriously because "without the presence of the accused, the prosecution could not go forward and the state would be denied its opportunity to seek justice." *State v. Sauve*, 159 Vt. 566, 574, 621 A.2d 1296, 1301 (1993). Interpreting § 7559(d) as sanctioning those who do not appear at court proceedings or other proceedings that directly advance a prosecution ties increasing threats to the judicial process with commensurate punishments: minor violations of reporting conditions are subject to criminal contempt proceedings under subsection (e), violations of restrictions on travel and harassment may justify warrantless arrest under subsection (f) and are punishable under subsection (e), and failures to appear at court proceedings or other proceedings that directly advance a prosecution justify warrantless arrest under (f), the stiff criminal penalties of subsection (d), and may lead to a revocation of bail under § 7575. It is uncontested that petitioner never missed an appearance at court; he was therefore properly chargeable under § 7559(e) only.

¶ 19. Finally, the legislative history of subsections (d) and (e) conclusively demonstrates that the Legislature intended for subsection (d) to apply to appearances at court proceedings and for subsection (e) to apply to all other conditions of release. "We have frequently relied upon legislative history" to aid in interpreting statutes. *In re Dep't of Bldgs. & Gen. Servs.*, 2003 VT 92, ¶ 14, 176 Vt. 41, 838 A.2d 78. In 1982, the House Judiciary Committee drafted a bill increasing the penalties for violating conditions of release. This bill increased the penalty for failing to "appear at a specified time and place in connection with a prosecution for an offense" under § 7559(d) from a maximum of one year and $1,000 to a maximum of two years and $5,000. H.728, 1981-1982 Gen. Assem., Bien. Sess., § 17 (Vt. 1982). In addition, the original bill included a provision that would have added § 7559(e), criminalizing the violation of "any of the conditions of release ordered by the court" with a maximum penalty of one year imprisonment and a $1,000 fine. *Id.* § 18. The latter portion of the bill did not pass the Senate in 1982, although it would return in a very similar form in 1987.

¶ 20. In 1982, Representative Norris Hoyt, sponsor of H.728 and chairman of the House Judiciary Committee, explained the bail

provisions of H.728 to the Senate Judiciary Committee. According to Hoyt, the proposed § 7559(d) would apply to:

> a person who has been released, with or without bail, on condition that he appear at a specified time and place in connection with the prosecution of an offense, *which could be for a trial or for a status conference or other proceeding with respect to the prosecution where he is ordered to appear and without just cause fails to appear. This was presented to us as a case of people who don't show up for trial, but actually it can be other proceedings in connection with trial.*

Hearing on H.728 Before Senate Judiciary Comm., 1981-1982 Bien. Sess., 23-24 (Vt. March 17, 1982) (statement of Rep. Norris Hoyt) (emphasis added). In contrast, Representative Hoyt explained that the proposed subsection (e) would apply to

> persons who have been released on conditions of release and violate[] those conditions. They could be don't drink alcoholic beverages, don't associate with certain people, don't go see certain people . . . , *report every Wednesday to the police station.* This section imposes a specific penalty for the violation of any condition.

*Id.* at 24 (emphasis added). Representative Hoyt's explanation of H.728 indicates the legislative intent that § 7559(d) apply only to court proceedings and that subsection (e) apply generally to all other conditions of release. Representative Hoyt's testimony is especially persuasive because the "statements were made by the chief sponsor of the bill" and his statements "directly addressed the [legislative] intent issue before us." *In re Dep't of Bldgs. & Gen. Servs.*, 2003 VT 92, ¶ 17. Applying the harsh penalties of subsection (d) to violations of reporting conditions perverts the clear legislative intent behind (d) and (e), as expressed by Representative Hoyt.

¶ 21. In 1987, the Senate Judiciary Committee again considered a bill penalizing violations of general conditions of release. An early version of this bill, S.81, provided:

> 13 V.S.A. § 7559(f) is added to read:
>
> (f) A person charged with an offense who has been released with or without bail *and who violates a condi-*

*tion of release other than a condition that he or she appear at trial* shall be imprisoned not more than one year or fined not more than $1,000.00, or both, if the person is convicted for the underlying offense and if the condition violated constituted one of the following:

(1) *a reporting condition*;

(2) a restriction on travel;

(3) a condition that the defendant not contact, harass or cause to be harassed a victim or potential witness.

S.81, 1986-1987 Gen. Assem., Bien. Sess., § 4 (Vt. 1987) (emphasis added). Even at this early stage, the Senate Judiciary Committee distinguished between appearance conditions and reporting conditions.

¶ 22. Later in 1987, Chris Leopold, the director of the state's attorneys, testified before the Senate Judiciary Committee that violations of general conditions of release should be criminalized, demonstrating that they were not already criminalized by subsection (d). Hearing on S.81 Before Senate Judiciary Comm., 1986-1987 Bien. Sess., 13-14 (Vt. Feb. 20, 1987) (testimony of State's Attorneys Director Chris Leopold). A senator pointed out that "[i]t is a criminal offense to violate an appearance condition." *Id.* at 14. Leopold agreed: "There is a statute for failure to appear, *so that if the individual doesn't respond to a scheduled court appearance date*, that constitutes a separate criminal offense." *Id.* (emphasis added). This exchange demonstrates that both the Legislature and the Executive understood that prior to the passage of subsection (e), failure to appear at court proceedings was criminalized while violation of other conditions of release was not.

¶ 23. If we were to allow prosecutors to interpret § 7559(d) as applying to reporting conditions, despite the disproportionate penalties that would result, and despite clear indication of a contrary legislative intent, we would be permitting prosecutors to infringe on the Legislature's province of defining crimes. This would be impermissible. Under the superior court's interpretation of this statute, prosecutors would receive broad discretion to choose the punishment of those who violate conditions of release. A prosecutor would be able to charge someone who fails to report to a police station under the more lenient subsection (e), or to

seek four-fold greater penalties under § 7559(d). Although a degree of prosecutorial discretion is acceptable, see *In re G.T.*, 170 Vt. 507, 514, 758 A.2d 301, 306 (2000), we are skeptical of statutes that appear "to afford the prosecution a choice of two penalties of such disparate nature." *State v. Goodhue*, 2003 VT 85, ¶ 21, 175 Vt. 457, 833 A.2d 861.

*Reversed.*

¶ 24. **Burgess, J.,** dissenting. We have just been treated to an unwarranted judicial revision of 13 V.S.A. § 7559. Its plain and unambiguous language is ignored in favor of terms and purposes foreign to its passage. The trial court's construction of the act, entirely consistent with legislative intent evinced by the chronology and context of its earlier expression and later amendment, is overruled based, in part, on inapposite snippets of legislative history. The Legislature's rational choice to create greater and lesser-included offenses for violating conditions of release is inaccurately characterized as absurd. Because the statute, as enacted and intended, was properly applied by the trial judge, I respectfully dissent.

¶ 25. Conditions of pretrial release may be imposed as necessary to reasonably assure defendants' appearance, *id.* § 7554(a)(1), and to reasonably assure public protection, *id.* § 7554(a)(2). Conditions may, or may not, include orders to appear at certain times and places. Depending on risk of flight, defendants may be ordered to "return to custody after specified hours," *id.* § 7554(a)(1)(F), to abide by curfew hours at a residence, or simply to register at a police station at designated times to confirm their continued presence in the area, *id.* Depending on risk to public safety, similar time and place conditions, like police station, probation office, or counseling check-ins, may be imposed to confirm defendants' ongoing sobriety, alcohol or drug treatment, probation, and compliance with mental-health treatment. *Id.* § 7554(a)(2)(C). Other defendants, who present a risk to public safety, may have no time-and-place conditions, but may be burdened by conditions restricting associations or travel, *id.* § 7554(a)(2)(B), harassment of others, *id.* § 7554(a)(3), or drug or alcohol use, *id.* § 7554(a)(2)(C).

¶ 26. Two penalties are provided for violating release conditions. The first, set forth at 13 V.S.A. § 7559(d), is up to two years' imprisonment for failure to appear, as ordered under § 7554, "at

a specified time and place in connection with a prosecution." The second is up to six months for the lesser-included offense of criminal contempt, as set forth at § 7559(e), for failure to abide by "a condition of release" generally imposed under § 7554. See *State v. Forbes*, 147 Vt. 612, 616-17, 523 A.2d 1232, 1235 (1987) (holding that "a lesser-included offense of another . . . is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense").

¶ 27. In an unnatural reading of the statute, the majority construes away the Legislature's gradation between the greater § 7559(d) offense of violating time and place conditions of release, and the lesser-included § 7559(e) offense of violating any condition of release. Unnecessarily, the majority declares impossible the more serious violation under § 7559(d), for a failure to appear at a time and place, such as at a police station, a drug treatment facility, a probation office, a drug or alcohol test, to a designated custodian, or to abide by curfew or work release from pretrial incarceration, even when such conditions are imposed to "reasonably assure the appearance" of the defendant under § 7554(a)(1). In its place the majority substitutes one penalty for a failure to appear at court "to directly advance a prosecution," instead of for violating time-and-place orders imposed "in connection with a prosecution" as stated by § 7559(d), so that now violations of time-and-place conditions, as well as all other conditions, are subject only to the lesser penalty of § 7559(e).

¶ 28. The majority's construction is not only at odds with the statutory language, but it derails the statute from its purpose as clearly reflected in its legislative evolution. Section 7559(d), in its current form since 1982, expressly outlawed violations of orders to appear at times and places "in connection with a prosecution." 1981, No. 223 (Adj. Sess.), § 15. Courts were, at the time, authorized to order conditions only to "reasonably assure the appearance of the person for trial." 13 V.S.A. § 7553a(a) (Cum. Supp. 1968) (§ 7553a was recodified in 1974, as amended, at the current § 7554). Expressly included in these conditions were orders to report or appear at times and places *other than at court. Id.* § 7553a(a)(1) (placing defendant in the custody of another), (2) (restricting travel or "place of abode") and (5) (authorizing "any other condition deemed reasonably necessary to assure appearance") (Cum. Supp. 1968). The same act directed courts to issue the defendant a statement "of *the conditions*

imposed," and the "penalties applicable to violations of *the conditions of his release.*" *Id.* § 7553a(c) (Cum. Supp. 1968) (emphases added). The Legislature thus clearly stated that, without exception, condition violations could be penalized. And, at that time, the only "applicable" statutory penalty for the condition violation of failing to report was the fine and up to two years of incarceration provided by § 7559(d).

¶ 29. Thus, as of 1982, the only conditions that could be issued "in connection with a prosecution" were those authorized by § 7553a. Those conditions included orders to report at certain times and places as would "reasonably assure the appearance of the person for trial," including reporting conditions. 13 V.S.A. § 7553a(a)(1)-(5) (Cum. Supp. 1968). All time and place conditions of release, without distinction, required a warning that their violations would be penalized, § 7553a(c) (Cum. Supp. 1968), and at that time, § 7559(d) offered the only available statutory penalty. Not one such condition could be said to "directly advance a prosecution" — the standard the majority grafts onto the statute today. Nevertheless, and contrary to the majority's construction, violations of all § 7553a (Cum. Supp. 1968) time-and-place conditions were subject to the failure-to-appear penalty under § 7559(d).

¶ 30. Subsection 7559(e) was added later to enforce, not just the time and place conditions enforceable under subsection (d), but any and all conditions of release. In this regard, it is important to note that when subsection (d) was first in place, § 7554 (then § 7553a) did not yet authorize the trial court to impose conditions to affirmatively protect the public, complainants, or witnesses.[3] This changed in 1987 with the amendment of § 7554(a), which created § 7554(a)(2) to permit conditions of release to "reasonably assure protection of the public." 1987, No. 102, § 2. Contemporaneous with that amendment was the addition of § 7559(e). *Id.* § 3. This subsection penalizes violations of § 7554 conditions of release generally, including the then-newly-authorized conditions for protecting the public, such as restrictions on contact, § 7554(a)(2)(B), restrictions on alcohol or drug use, § 7554(a)(2)(C), and protections against victim or witness harassment, § 7554(a)(3). 1987, No. 102, § 2.

---

[3] See 13 V.S.A. § 7553a(b) (Cum. Supp. 1968) (charging the court only with determining conditions of release that "will reasonably assure appearance and will not constitute a danger to the public").

¶ 31. The new § 7559(e) penalty was, of course, critical to enforcing the new protective conditions. Violations of protective conditions lacking any time and place reporting requirements could not be subject to the existing § 7559(d) penalty for failure to "appear at a specified time and place in connection with a prosecution." The Legislature enacted the lesser § 7559(e) penalty for any condition violation, rather than leaving protective violations unpunished under § 7559(d). Thus, before and after 1987, failures to obey time-and-place reporting conditions issued pursuant to § 7554 were punishable under § 7559(d), while after the 1987 amendment to § 7554 and the addition of § 7559(e), violations of any condition were unambiguously punishable under § 7559(e).

¶ 32. The majority alters this fairly straightforward legislative scheme based on two assertions, mutually supporting but lacking any foundation in the statutory text. The first is that the Legislature intended to limit § 7559(d) enforcement only to time-and-place conditions that "directly advance a prosecution," *ante*, ¶ 14, rather than conditions "to appear at a specified time and place in connection with a prosecution" as set forth in the statute. The second is that the pretrial release statutes as a whole reflect this intent by creating two separate and exclusive classes of conditions: one the majority characterizes as "appearance conditions" specifying only times and places that "directly advance a prosecution," and a lower caste of "conditions of release" encompassing all other conditions that do not directly advance a case.

¶ 33. Violations of the majority's "appearance conditions" that "directly advance a prosecution" are, we are told, exclusively subject to the more severe punishment of § 7559(d), while violations of all the other lesser "conditions of release" — like reporting to a police station, probation office, or curfew residence to confirm a defendant's presence and continuing likelihood to appear at court — face the lesser penalties for contempt, along with the violations of no-contact, no-association, no-travel, no-alcohol and other protective conditions to which § 7559(e) applies. The majority's "appearance conditions" are exclusive indeed, since only an order to attend court can, practically speaking, "directly advance a prosecution," and no other kind of "appearance condition," according to the majority's construction, would be authorized to "reasonably assure the appearance of the person as required" under § 7554(a)(1). Thus, the majority reduces actionable violations of § 7559(d) to just one: missed court dates. Of

course, had the Legislature intended such a singular and limited use of the greater subsection (d) penalty, and a corresponding application of the lesser subsection (e) penalty to all other violations, it could have said so. It did not.

¶ 34. Having no statutory text to support its approach, the majority finds it necessary to infer a distinction between enforcement of time-and-place appearances to "directly advance a prosecution" and the broader violation of failing to appear "in connection with a prosecution" as defined by § 7559(d). To get there, the majority posits that "conditions of release . . . are intended to ensure the person's appearance at trial." *Ante*, ¶ 13. So, to avoid rendering the modifying phrase "in connection with a prosecution" meaningless, we are told the Legislature must have meant the more severe subsection (d) penalty for violations of conditions that directly advance a case, rather than for failures to appear at times and places ordered merely "in connection with a prosecution," as stated. *Ante*, ¶ 14. The premise, however, that *all* conditions of release are intended to assure a defendant's appearance at trial is plainly wrong. The statute specifies that if the public is not protected by reporting and appearance conditions of release alone, the court "may *in addition* impose . . . conditions which will reasonably assure protection of the public." 13 V.S.A. § 7554(a)(2) (emphasis added). Assuming, logically, that the Legislature intended such conditions to be enforced, rather than amount to a nullity, these are also termed "conditions of release" enforceable under § 7559(e). While some conditions could serve both purposes, there are certainly others, i.e., no-contact conditions, conditions forbidding harassment of victims, conditions that defendants not associate with co-defendants or witnesses, orders to stay out of town and the like, that have nothing to do with assuring court appearances.

¶ 35. No statutory language suggests that conditions subject to subsection (d) enforcement are of a subspecies separate from what the statute simply states: conditions to "appear at a specified time and place in connection with a prosecution." Confining all time-and-place violations, except against those conditions directly advancing a case, to the lesser sanction of § 7559(e) is not, as claimed by the majority, explained by the statute's authorization of warrantless arrest for both failure to appear at court and failure to abide by travel and contact restrictions under § 7559(f). Nor is it apparent why the statutory authorization to revoke bail

for violations of nonharassment "conditions of release," § 7575(1), repeated violations of *any* "condition of release," § 7575(2), and "fail[ure] to appear at a specified time and place," § 7575(4), supports a claim of legislative intent to treat a single failure to appear at court differently and more seriously than serial violations, as in defendant's case, of other time-and-place conditions. Moreover, the Legislature's consideration of both — repeated violations of "conditions of release" and failure to appear at a judicially ordered "specified time and place" — as equally worthy of bail revocation, see *id.* § 7575(2) and (4), suggests, instead, that the sharp distinction perceived by the majority between some appearance conditions and others was not shared by the Legislature.

¶ 36. That some conditions to assure appearance at court proceedings, such as ordering a defendant into the watchful custody of a responsible adult, orders to maintain sobriety, curfew, and the like, can equally serve to protect the public, and vice-versa, is a coincidence entirely consistent with § 7554. Penalizing noncompliance with time-and-place mandates imposed to assure future appearances, such as reporting to a police station, probation office, nightly lock-up, or curfew residence under § 7559(d), as seriously as a failure to appear for a court status conference or calendar call, is just as consistent. An election to charge the same violation as a lesser-included contempt offense under § 7559(e), commensurate with associating with a co-defendant or crossing a town line when prohibited by conditions of release, is also a rational option not inconsistent with the statute. Nor is it absurd for the Legislature to allow prosecutors the discretion to initiate a lesser charge, and also to ramp up the charge for new offenses, as in defendant's case, when violations turn chronic. These logical results beg no interpretation or corrective construction from this Court.

¶ 37. The majority overreaches in characterizing as absurd the potential for a more severe penalty for time-and-place violations than for violations of other public-protection conditions. There is no challenge to proportionality here, and the weighting of penalties for related infractions is presumptively within the prerogative of the Legislature. When protective conditions and reporting conditions merge or overlap, violations of those protective conditions can be treated more seriously than others. If, as the majority notes, assuring appearance at court was "of paramount

importance" to the Legislature, *ante*, ¶ 18, it is hardly strange that the Legislature would elect to treat violations of time-and-place conditions designed to support and promote court attendance, i.e., reporting to police stations, probation offices, curfew residences, and nightly lock-ups, as seriously as failing to appear at court. This plain legislative scheme, and its allowance of a lesser-included offense for all violations, including violations of other conditions like travel limits or nonharassment orders, may be curious, or even imperfect, but it is not irrational or ridiculous.[4]

¶ 38. Finally, the majority turns to selected instances of legislative history as a bootstrap for its construction of § 7559(d) and (e). At the outset, resorting to legislative history falls outside of our canons of construction since the statute is plain on its face, *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶ 22, 181 Vt. 225, 917 A.2d 451, and when read in context with its statutory siblings, its own enactment and the amendment to § 7554, the § 7559 enforcement subsections present neither surplusage nor mysteries demanding clarification. Ultimately, the history described adds little, if any, weight to the majority's rationale and cannot override the language of the statute. *Chayer v. Ethan Allen, Inc.*, 2008 VT 45, ¶ 18, 183 Vt. 439, 954 A.2d 783.

¶ 39. First, the majority submits statements by the sponsor of a proposed addition of § 7559(e) not passed in 1982 to explain legislative intent behind the passage of subsection (e) in 1987, five years later. If it explains anything, the sponsor's declaration that subsection (e) would penalize "the violation of *any* condition" (emphasis added) explicitly contradicts the majority's theory that subsection (e) cannot apply to court-appearance conditions. Regarding § 7559(d), the sponsor's confirmation that it would apply to a person "released . . . on condition that he appear at a specified time and place in connection with the prosecution of an offense, which *could* be for a trial or . . . other proceeding" (emphasis added), does not confirm the majority's exclusion of all

---

[4] Certainly this result is no more absurd than the legislative choice, confirmed in *State v. Baron*, 2004 VT 20, 176 Vt. 314, 848 A.2d 275, to criminalize slapping one's child in the face as a domestic assault in violation of 13 V.S.A. § 1042, while excluding the same act from the definition of actionable child abuse under the abuse prevention statutes, 15 V.S.A. § 1101(1)(C); 33 V.S.A. § 4912(6). Observed Justice Skoglund in *Baron*, while questioning the logic of such a choice, "I cannot find the result so absurd as to permit a different interpretation of statutory intent." 2004 VT 20, ¶ 19 (Skoglund, J., concurring). My Sister Skoglund, so correct in *Baron*, is wrong today.

other time-and-place reporting failures as violations of subsection (d).

¶ 40. Next, we are referred to an early proposal of the 1987 bill to pass a § 7559(f) penalty of up to a year in jail for violating a "condition of release other than a condition that he or she appear at trial," *if* the condition was also a "reporting condition" *and* the offender was convicted of an underlying offense. Those same variables and predicates in the bill were never adopted. Subsection (f) is not at issue in this case, and the final version passed into law contains none of language cited by the majority. It is no more likely that the bill reflected a commonly understood distinction between appearance at trial and other appearance conditions than it is that the bill failed because the Legislature did not agree with the distinctions now resurrected by the majority.

¶ 41. Finally, the majority's conclusion that only failures to appear at court were intended to be penalized under § 7559(d) just does not follow from the acknowledgment between a prosecutor-lobbyist and a senator at a 1987 Senate Judiciary Committee hearing that failure to appear at court was then already "a separate criminal offense" while violations of general conditions of release were not. Criminal enforcement of the newly authorized contact, harassment, travel, and substance-abuse conditions of release certainly required the addition of subsection (e), since violations of those conditions were not subject to the sole penalty then provided under subsection (d), which was applicable only to time-and-place violations. That does not mean that enforcement of time-and-place reporting conditions, already in place before the enactment of subsection (e), was limited only to court appearances, or that reporting violations could not be prosecuted as failures to "appear at a specified time and place in connection with a prosecution" as stated by § 7559(d). Neither the lobbyist nor the senator said so, and their comments in no way contradict the trial court's reading of the plain language of § 7559(d) to punish a violation of its specific order that defendant appear at the police department at a certain time each day. Even if the lobbyist's statement could be construed beyond its context, we ordinarily give "little weight" to "the remarks of a single witness at a committee hearing." *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶ 19. For the same reason, the comments of one lobbyist and one senator cannot reasonably be credited so completely as to narrow what the statute says, or plausibly be claimed to represent the understanding of a legislative majority.

¶ 42. We should adopt the trial court's application of § 7559(d)'s actual language, without substituting the majority's language "directly advance a prosecution" for the statutory phrase "in connection with a prosecution." Petitioner's admitted failure to appear at the police station as ordered falls within the plain meaning of § 7559(d). See *State v. Ashley*, 161 Vt. 65, 67, 632 A.2d 1368, 1370 (1993) (in interpreting statute, Supreme Court looks first to plain meaning of statute, and if meaning of statute is plain, statute must be enforced according to its terms). In this case, petitioner was ordered to "appear at a specified time and place" as a condition of release, and the condition was imposed "in connection with a prosecution for an offense" under § 7554(a)(1). The condition was to assure that petitioner remained in the area for his trial, and it was subject to enforcement under § 7559(d) to the same extent that such reporting conditions have been enforced since 1982, before the advent of protective conditions of release and the § 7559(e) option of a lesser-included violation-of-conditions offense.

¶ 43. The trial court's conclusion that the charged violation was literally, and logically, penalized by § 7559(d) as a failure to abide with the "condition that he appear at a specified time and place in connection with a prosecution" should be affirmed.