**In re Appeal of Department of Buildings and General Services**

[838 A.2d 78]

No. 02-134

Present: **Amestoy, C.J., Dooley, Morse,**[1] **Johnson and Skoglund, JJ.**

Opinion Filed October 10, 2003

*William H. Sorrell,* Attorney General, *William H. Rice,* Assistant Attorney General, and *Stacy A. Butler,* Special Assistant Attorney General, Montpelier, for Appellant.

---

[1] Justice Morse sat for oral argument but did not participate in this decision.

*J. Christopher Callahan* and *Brendan P. Donahue* of *Brady & Callahan, P.C.*, Springfield, for Appellee.

*Jon Groveman*, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

¶ 1. **Dooley, J.** The Vermont Department of Buildings and General Services (State Buildings) appeals from the environmental court's holding that the Town of Windsor (Town) may regulate aspects of certain uses — specifically, state or community owned and operated institutions and facilities — beyond those specifically enumerated in 24 V.S.A. § 4409(a) so long as the Town makes reasonable provision for the location of the use. More precisely, State Buildings maintains that, despite the Town's reasonable provision for the location of a state-owned maintenance facility, the Town exceeded its regulatory authority under 24 V.S.A. § 4409(a) by regulating the use of the facility as well as particular physical characteristics not enumerated in the statute. We agree and reverse.

¶ 2. The State of Vermont owns a parcel of land situated in a resource (R5) zoning district in the Town. The parcel contains two facilities, the Southeast State Correctional Facility and the Southern District Maintenance Facility, which are operated by different state departments. The correctional facility's fence and perimeter roadway separate it from the maintenance facility, which consists solely of an office building and an old one-bay garage. The maintenance facility is used by State Buildings as an office for its southern district and for maintenance vehicles and equipment necessary for its maintenance activities.

¶ 3. On July 10, 2000, State Buildings applied for a zoning permit to replace the maintenance facility's existing one-bay garage with a three-bay garage. On July 19, the Windsor Zoning Administrator ruled that the application required site plan review by the Planning Commission and conditional use review by the Zoning Board of Adjustment (ZBA). State Buildings did not contest this determination. The Planning Commission approved the site plan a month later on August 21, and this approval was not appealed. On August 28, the ZBA approved the conditional use application, finding that the garage was an accessory structure allowed as a conditional use in the district and met the general standards found in the zoning ordinance and 24 V.S.A. § 4407(2). The findings reflect the representations of State Buildings in its application. The approval was subject to six conditions as follows:

> 2.  Applicant must construct, maintain and operate the proposed 30×50′ 3-bay replacement garage and related improvements in strict conformance with the Site Plan and

project description submitted by them and specifically identified in the findings of fact.

3. The building shall meet all Labor and Industry requirements.

4. Landscaping shall be maintained at the standards consistent with the surrounding buildings.

5. Any exterior lighting added during construction will be directional in nature to shine forward and down.

6. Any proposed signage will meet the sign regulation of the Windsor Zoning Bylaws.

7. Applicants shall construct all improvements, including landscaping, authorized by this approval within one year of the date of this approval or this approval shall automatically become null and void.

¶ 4. State Buildings appealed the ZBA decision and the permit to the environmental court, arguing that the Town of Windsor exceeded its regulatory authority under 24 V.S.A. § 4409(a) by regulating aspects of the project, such as the intended use, beyond those enumerated in § 4409(a), and by requiring the project to conform to Town zoning requirements and bylaws. Specifically, State Buildings attacked conditions 2, 3, 5, 6, and 7 as beyond the power of the ZBA. In connection with its challenge to condition 2, it disputed ten of the findings of fact which reflected State Buildings' description of the new maintenance building or its use. State Buildings argued that the Town did not have the power to require it to adhere to its description through an approval condition. It also raised the more general question of whether the ZBA has the authority to grant conditional use approval for a state facility based upon findings of facts and conclusions of law that address elements outside the scope of 24 V.S.A. § 4409(a).

¶ 5. State Buildings filed for summary judgment, relying upon 24 V.S.A. § 4409(a), which provides:

Unless reasonable provision is made for the location of any of the following in a [zoning] bylaw . . . the following uses may only be regulated with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening requirements: . . . (2) State or community owned and operated institutions or facilities. . . .

State Buildings argued that § 4409(a) greatly restricts a municipality's ability to regulate state-owned land uses. Specifically, State Buildings argued that a municipality can regulate only with respect to the list of elements in the statute plus location, but with respect to the latter only if the municipality makes reasonable provision for the location of the state institution or facility within the municipality. The Town countered with its own motion for summary judgment, arguing that State Buildings read the statute too narrowly. It argued that § 4409(a) allows a municipality to regulate state-owned facilities and institutions to the same extent as private land uses as long as the municipality makes reasonable provision for the location of the state facilities and institutions. Only if the municipality fails to make reasonable provision for these facilities and institutions, the Town asserted, is it restricted to the statutory list of permissible zoning regulation subjects. Finally, the Town claimed that it made reasonable provision for the location of the correctional center and maintenance facility, and, as a result, it could apply its zoning regulations fully to the State Buildings' application with no limits imposed by § 4409(a).

¶ 6. Although the parties framed almost exclusively a question of law turning on the proper construction of § 4409(a), their filings did reveal a dispute over the nature of the development application and the review required under the zoning ordinance. The Town asserted that the maintenance facility was part of the correctional facility, which was an approved conditional use in the zoning district in which it was sited. Thus, the Town applied conditional use review to the State Buildings' development application. State Buildings claimed that the maintenance facility was a separate use, adjoining but unconnected to the correctional center. As the environmental court noted, a difficulty with State Buildings' position was that the zoning ordinance did not authorize the maintenance facility as either a permitted or conditional use in the district in which it was located. The ordinance did provide for Public Building: Maintenance & Storage as a conditional use in other districts. Thus, the court concluded that under State Buildings' theory, the application could be allowed only as an expansion to a preexisting nonconforming use or as an expansion to a use which holds an erroneously issued but final permit.

¶ 7. The environmental court did not resolve this conflict because it found that § 4409(a) did not limit the Town's ability to regulate the proposed replacement of the maintenance facility. In reaching this conclusion, it adopted the Town's interpretation of § 4409(a) and found that the Town had made reasonable provision for the location of state-owned facilities and institutions in its zoning ordinance. Thus, it affirmed

the permit issued by the ZBA. State Buildings appeals here, making the same argument regarding the proper interpretation of 24 V.S.A. § 4409(a).

¶ 8. The primary question presented to this Court is whether the environmental court erred in interpreting 24 V.S.A. § 4409(a) to mean that once a municipality provides a reasonable location for a state facility, the municipality may regulate all aspects of the state project, even those not enumerated in the statute. Issues concerning the proper construction of a statute are questions of law, and thus reviewed on a nondeferential and plenary basis. *State v. Koch*, 169 Vt. 109, 112, 730 A.2d 577, 580 (1999).

¶ 9. The parties agree on part of the meaning of the statute. They agree that if a municipality fails to make a "reasonable provision . . . for the location of . . . State . . . owned and operated institutions and facilities," a municipality can regulate those institutions and facilities through zoning only "with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening requirements." 24 V.S.A. § 4409(a)(2). They disagree, however, on the municipality's regulatory power if it makes reasonable provision for the location of state-owned and operated facilities and institutions. In the Town's view, a municipality is then free to exercise the same zoning power over those facilities and institutions as it could if they were privately owned — that is, without regard to any limitations imposed by § 4409(a). In State Buildings' view, the Town is then free to regulate location in addition to the statutory elements, but nothing more.

¶ 10. We have twice addressed § 4409(a) in the context of a state development application, but neither decision clearly answers the question before us. In *Morse v. Vermont Division of State Buildings*, 136 Vt. 253, 388 A.2d 371 (1978), which also involved the Town of Windsor, State Buildings embarked on a landscaping and sewer construction project for a residential treatment facility in the Town. It sought a zoning permit for the landscaping, but not for the sewer disposal system, and the Town sought to stop the latter. This Court phrased the question before it as:

> whether or not that zoning authority [under § 4409(a)] also extends to sewer construction. If it does, clearly, the Buildings Division is required to follow its procedures. If it does not, equally clearly, the Zoning Administrator had no authority to condition the issuance of the permit for landscaping or the procuring of a sewer construction permit from the town.

*Id.* at 255, 388 A.2d at 372. We also posed the issue as one of sovereignty: "[w]here conflict occurs, and no resolution is statutorily prescribed, the

municipality must yield." *Id.* We held that since sewer construction is not one of the uses a municipality is authorized to regulate with respect to a state-operated institution, the Town could not prevail. *Id.* at 256, 388 A.2d at 373.

¶ 11. *Morse* is of limited assistance to us because the opinion does not indicate whether the Town had made reasonable provision for the location of state-owned and operated facilities, and fails to address that part of the statute. The statute was again addressed in *Vermont Division of State Buildings v. Town of Castleton Board of Adjustment*, 138 Vt. 250, 415 A.2d 188 (1980), in which State Buildings proposed to remodel a college dormitory into a juvenile detention facility and the Castleton ZBA denied the permit because the project failed to meet the setback requirements in the ordinance. In that case, however, the Town of Castleton was regulating the use with respect to a statutorily-authorized element, setbacks, so construction of § 4409(a) was unnecessary. We did, however, describe the statute more fully than we did in *Morse*:

> Section 4409(a) specifies that municipalities may make reasonable provision for the *location* of such facilities by bylaw and, even if no such provisions are made, that the municipality may, nevertheless, regulate these facilities with "respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening."
>
> . . . A municipality cannot, for example, condition the granting of a landscaping permit to the submission by the public agency to the municipality's authority to regulate the location of its facility, unless "reasonable provision" has been made in the municipal bylaws concerning such location requirements.

*Id.* at 258, 415 A.2d at 193-94 (internal citations omitted). Although *Town of Castleton* addressed the opening phrase of § 4409(a), it did so only with respect to the Town of Castleton's power to regulate the location of the state facility. It did not address the nonlocation regulation at issue in this case.

¶ 12. We acknowledge that if we were to decide this case solely on the statutory language, the Town has the better side of the argument. The Vermont Planning and Development Act gives the Town broad power to restrict, regulate, and determine land development. 24 V.S.A. § 4401(b)(1). Section 4409(a) represents a limitation on that broad power. Nowhere does the statutory wording explicitly limit the Town's power to employ its full zoning power with respect to state-owned and operated

facilities if it provides reasonable provision for the location of the facilities. Further, § 4409(a) applies to other land uses — for example, those of churches or hospitals — where sovereign immunity is not directly involved. See *id.* § 4409(a)(4), (5).

¶ 13. Nevertheless, we are not prepared to go as far as the environmental court and hold that the meaning of the statutory language is so plain that no aids to construction should be employed. See *Town of Killington v. State*, 172 Vt. 182, 188, 776 A.2d 395, 400 (2001) (normally "we accept the plain meaning as the intent of the Legislature without looking further"). We are required to implement the intent of the Legislature. See *id.* As *Morse* and *Town of Castleton* make clear, the statute involves not only a limitation on the Town's zoning power, but also a limitation on the State's sovereignty with respect to the use of its land. The presumption of legislative intent, if any, resides with the State. See *Morse*, 136 Vt. at 256, 388 A.2d at 373 ("unless some contrary statutory grant exists, the zoning authority of a municipality . . . cannot obstruct the implementation of state purpose and authority"). Although the language favors the Town, it does not explicitly state the Town's position that it should be able to regulate any aspect of State Buildings' development project.

¶ 14. The State urges that we should decide this case based primarily on the legislative history behind the statute. We have frequently relied upon legislative history where the meaning of the statute cannot be determined from the words alone. See, e.g., *Sagar v. Warren Selectboard*, 170 Vt. 167, 171-73, 744 A.2d 422, 426 (1999); *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999). In relying upon legislative history, however, we must be cognizant of the quality of the evidence of legislative intent. Thus, we noted in *State v. Madison*, 163 Vt. 360, 373, 658 A.2d 536, 545 (1995), that "the remarks of a witness at a committee hearing are accorded little weight in determining the intent of the legislature in enacting a statute."

¶ 15. State Buildings relies upon two kinds of legislative history: (1) the history of enactment of an amendment to § 4409(a), and (2) the history of the bill that resulted in the key language of § 4409(a). With respect to the former, State Buildings notes that in its original form § 4409 began: "The following uses may only be regulated with respect to . . . ." See 1967, No. 334 (Adj. Sess.), § 1 (adding 24 V.S.A. chapter 117, including § 4409). Based on this language, and on the section's title — "Limitations" — it is evident that the Legislature originally intended § 4409 to limit on the ability of municipalities to control the listed uses and did not allow them to regulate the location of such uses. In 1972, the Legislature added the

opening clause of § 4409(a) — "Unless reasonable provision is made for the location of any of the following in a [zoning] bylaw . . . ." 1971, No. 257 (Adj. Sess.), § 12, eff. Apr. 11, 1972. The operative language has remained the same since the 1972 amendment. Given this legislative history, State Buildings argues that it is unlikely the same legislature that in 1968 permitted very limited zoning regulation of state facilities would turn around and enact an amendment in 1972 giving towns making a reasonable provision on location unlimited power to regulate all other aspects of state-owned and operated facilities.

¶ 16. State Buildings relies more heavily on the second part of the legislative history, the committee discussions on the 1972 amendment.[2] The amendment started as House Bill 80, and from the outset contained the additional clause to be added to 24 V.S.A. § 4409(a) as it reads today. H. 80 was labeled in the House Natural Resources Committee as "providing for housekeeping changes in the Planning and Development Act passed in a previous session." Record of Committee Meetings, Feb. 2, 1971, House Natural Resources Committee. The bill passed the House and was presented in the Senate Natural Resources Committee by Representative Edward Crane, the lead House sponsor, and Bernard Johnson of the State Planning Office, who apparently did much of the drafting. There was extensive discussion of the new opening clause to be added to § 4409(a). The presentation of Representative Crane and Mr. Johnson, as well as the Senate committee discussion, is consistent with State Buildings' interpretation of the statute. That is, the committee presentation and discussion shows that the purpose of the added language was to allow a municipality to regulate the location of the uses

---

[2] Six days before oral argument, and approximately five months after submission of its reply brief, State Buildings, through counsel, submitted to this Court a compilation of legislative history pertaining to 24 V.S.A. § 4409(a). The Town has moved to exclude this submission as untimely under V.R.A.P. 28, arguing that it constitutes new information beyond the scope of the pleadings. The Town's motion is denied. As we state in the text, legislative history plays an integral role in determining legislative intent of unclear and ambiguous statutory language.

Parties may provide us "pertinent and significant authorities" bearing on their argument under V.R.A.P. 28(i), even if after briefing and argument. While State Buildings can be faulted for not researching the legislative history prior to filing a brief, we see little prejudice to the Town. The Town's attorney is free to independently research the legislative history and provide additional information, seeking additional time if necessary to do so. We would, of course, prefer that the parties provide us pertinent legislative history rather than doing the research independently. In any case, parties and their attorneys should be on notice that legislative history may be consulted with respect to statutes the Court finds are ambiguous, whether or not the parties do the needed research.

covered in § 4409(a) as long as the town made reasonable provisions for location of the uses. As Mr. Johnson stated:

> This wording was added to give a town the opportunity to regulate the location of such things as certain public utilities and other kinds of things that are listed. The way it reads now, these may be regulated only in terms of things such as setback and height limitations and landscaping and so on. The philosophy has been up to this point that they should be regulated in terms of all things with the exception of their location in a community. This wording would say that if the community had a specific portion of its zoning regulations which addressed itself to the location of these kinds of facilities, such as a power generating plant for example, if they made provision in their law, then they can use that provision to regulate the location. However, if the local zoning ordinance says absolutely nothing about it, then they may not. That is why it is stated in kind of a negative way. In other words, unless reasonable provision is made for the location of any of the following.

Testimony of Bernard Johnson on H. 80 to Senate Natural Resources Committee, at 20 (Feb. 2, 1972); see also Testimony of Rep. Edward T. Crane on H. 411 to Senate Natural Resources Committee, at 21 (Feb. 2, 1972) ("The idea [behind the amendment] was to strengthen the local planning commission and board of adjustment's authority to regulate where certain uses would take place.").

¶ 17. We find the committee testimony and discussion much more weighty in determining legislative intent than the "remarks of a witness at a committee hearing" that we held in *Madison* would be given little weight. Here, the statements were made by the chief sponsor of the bill and its draftsperson and directly addressed the intent issue before us. Given these explicit statements of the amendment's purpose, we find that the amended "unless" clause merely added location to the already enumerated list of regulable aspects and did not expand municipal power to the extent urged upon us by the Town. See *In re Jewell*, 169 Vt. 604, 606, 737 A.2d 897, 900 (1999) (mem.) (this Court will not construe a statute in such a way that is at odds with its underlying purpose).

¶ 18. Although we resolve the specific issue on appeal differently than the environmental court, our decision only begins to respond to the questions State Buildings raised on appeal to the environmental court. We note two of the remaining questions that must be resolved on remand to be clear on the scope of this opinion. First, we note that the environ-

mental court will have to resolve the difference over the current zoning status of the maintenance facility. On this point, the position of each of the parties raises new issues. If the maintenance facility is covered by the conditional use permit issued for the correctional facility, the court must consider whether State Buildings now can attack conditional use review, or narrow that review, in the context of a permit amendment and after the zoning administrator ruled, without appeal, that conditional use review under the ordinance was required. We also note that it is not clear that State Buildings ever objected to conditional use review before the ZBA.

¶ 19. If, on the other hand, the maintenance facility is not covered by the zoning permit for the correctional facility, the court must determine how the current facility can be lawfully expanded. The Town's power to regulate location of a state-owned and operated facility necessarily gives it some regulatory power if the facility is in an unauthorized location.

¶ 20. Second, we note that some of the current controversy resulted from zoning administration concerns rather than from explicit attempts to engage in unauthorized zoning regulation of a state-owned facility. State Buildings submitted a zoning permit application that provided, in part:

> The undersigned hereby requests a zoning permit for the following use, to be issued on the basis of the representations contained herein. Permit voided in the event of misrepresentation or failure to undertake construction within one (1) year of the date of issuance and diligently prosecuted thereafter. Permits only authorize development as described in the application; any substantive change of plans shall require reapplication.

Although we apparently do not have before us all the information provided in connection with this application and the request for site plan review, it appears that all the information contained in the ZBA's findings of fact came from State Buildings, either in connection with the application(s) or at its oral presentation.

¶ 21. The zoning administrator and ZBA can act only in response to an application that describes the project to be permitted. In *City of South Burlington v. Department of Corrections*, 171 Vt. 587, 590-91, 762 A.2d 1229, 1231-32 (2000) (mem.), we ruled that a state agency could not accept permit restrictions without appeal and later claim that the conditions are invalid because of the limitations in § 4409(a). We reasoned:

> The Department responds that it cannot be bound by § 4472 [the appeal requirement statute] because it, as an agency of the

sovereign, is immune from municipal zoning regulations of any factor not specifically enumerated in 24 V.S.A. § 4409. It further argues that it had no need to appeal the 1992 site-plan approval because it knew the condition [limiting the number of inmates] was unenforceable due to its sovereign immunity. Essentially, the Department argues that it need not raise its claim to sovereign immunity until it chooses to do so and that no zoning proceeding is really final because it can always reopen a dispute by claiming sovereign immunity. We reject this argument. Section 4472 demonstrates an unmistakable intent to limit zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings. We are not convinced that the State should be exempt from these requirements.

*Id.* at 590, 762 A.2d at 1231. Similarly, we are not convinced that State Buildings is exempt from normal application procedures.

¶ 22. In the environmental court, State Buildings explained its actions with respect to the findings of fact: "The State of Vermont typically presents elements of a project not listed under 24 V.S.A. § 4409 for informational purposes, however an applicant does not have the authority nor can a zoning application be considered to subject the State to a broader scope of regulatory authority than granted to a municipality under 24 V.S.A. § 4409." To ensure procedural regularity, however, the zoning administrator and ZBA must be able to make a determination of what aspects of the project can be regulated under § 4409(a). This case is a good example of the complexity of that determination given State Buildings' claim that the maintenance facility must be treated independently in a district in which the use is not authorized. This determination can be made only if the state agency presents the proposed project and is clear from the outset how § 4409(a) limits the municipality's regulation of the project.

*Reversed and remanded.*