# STATE OF VERMONT

# SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| | } | |
| In re Town of Charlotte Recreational Trail | } | Docket No. 98-5-08 Vtec |
| (Appeal from Conditional Use approval; | } | |
| Application No. ZBA 07-13) | } | |

**********************************************************************

|  |  |  |
|---|---|---|
| | } | |
| In re Plouffe Farm Lane Recreational Trail | } | Docket No. 58-4-10 Vtec |
| (Appeal from Site Plan approval; | } | |
| Application No. PC-09-34) | } | |

## Decision on Town's Motion for Partial Summary Judgment

Gregg and Elizabeth Beldock ("Appellants") appeal the grant of conditional use approval by the Town of Charlotte ("Town") Zoning Board of Adjustment ("ZBA") for an outdoor recreational trail system on an approximately 80-acre parcel owned by the Town. Appellants also appeal the grant of site plan approval by the Town of Charlotte Planning Commission ("Commission") for the same trail system. The Town cross-appeals the Commission's decision.

In this consolidated de novo review of the pending applications, Joseph D. Fallon, Esq. represents Appellants and John H. Klesch, Esq. represents the Town. No other parties have entered an appearance in these appeals. Currently before the Court is the Town's motion for partial summary judgment. Appellants have responded with a memorandum in opposition and the Town has subsequently filed a reply memorandum.

## Factual Background

For the sole purpose of putting the pending motions into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. The Town has proposed the development of an outdoor recreational trail system on an approximately 80-acre parcel that the Town owns near Carpenter Road. The parcel includes an approximately half-mile long and 60-foot wide strip of land that connects the larger portion of the Town parcel to Carpenter Road.[1]

---

[1] It is unclear whether the approximately 80-acre measurement includes Plouffe Lane or if Plouffe Lane is in addition to the 80 acres. (See Statement of Undisputed Material Facts ¶ 2, filed Sept. 20, 2010; Russell Aff. Ex. 1 1, filed Sept. 20, 2010 (filed as Exhibit A to the Town's Motion for Partial Summary Judgment).) It is also unclear whether the Town-owned strip of land extending from Carpenter Road is 50 or 60 feet wide. (See Statement of Undisputed Material Facts ¶ 2; In re Application of Town of Charlotte Site Plan for Plouffe Farm Lane Recreational Facility Application PC-09-34, Findings of Fact and Decision, at 2 (City of Charlotte Planning Comm'n Mar. 18, 2010).) Because neither of these measurements is a material fact in the pending appeals, we refer to the measurements listed in the Town's Statement of Undisputed Material Facts.

2.    A private road, known as Plouffe Lane, travels over the Town-owned strip of land from Carpenter Road and to the Town's larger parcel. Just before Plouffe Lane reaches the Town's larger parcel, another private road spurs off to the north from Plouffe Lane and serves as access to other private properties. These private roads are maintained by the private entities who use them and enjoy easements over them; Appellants use Plouffe Lane to access their property, which abuts the Town's parcel.

3.    The Town's 80-acre parcel was once used as a Town landfill and currently contains an active stump dump, a parking area, and existing recreational trails[2] that are open to the public and connect to trails on adjacent parcels.

4.    The Town's proposed trail system is to include approximately 1.8 miles[3] of trails to be used for a variety of non-motorized recreational activities, an approximately 4,800 square foot parking area designed to accommodate up to 12 cars, an informational kiosk, and directional signage.

5.    On April 23, 2008, the ZBA granted conditional use approval to the Town for the proposed recreational trail development. Appellants appealed that decision to this Court.

6.    On March 18, 2010, the Commission granted site plan approval to the Town for the proposed recreational trail development. Appellants appealed that decision and the Town filed a cross-appeal.

## Discussion

Before the Court are two consolidated appeals concerning the Town's proposed development of an outdoor recreational trail system on an approximately 80-acre parcel owned by the Town and located near Carpenter Road. Appellants appealed the April 23, 2008 grant of conditional use approval by the ZBA as well as the March 18, 2010 grant of site plan approval by the Commission. The Town cross-appealed the Commission's decision. Presently before the Court is a motion for partial summary judgment filed by the Town as to most of the legal issues presented in both appeals.

We may grant summary judgment only if the record before us shows both that "there is no genuine issue as to any material fact" and that one of the parties is "entitled to judgment as a matter of law." V.R.C.P. Rule 56(c)(3); Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. In determining whether there are disputed material facts, the Court is directed to "accept as true the

---

[2] It appears that the existing trails are those for which the Town is currently seeking site plan and conditional use approval. No explanation has been provided as to why the trials were established before receiving municipal land use approval. This is of no concern to the Court, as our review of the pending applications in not impacted by the fact that some or all of the proposed trails have already been developed.

[3] It is unclear whether the proposed trails consist of 1.8 or 1.6 miles, since the filings reference both distances. (See Statement of Undisputed Material Facts ¶ 2; Town Site Plan for Plouffe Farm Lane Recreational Facility, at 3.) Because the exact distance is not material to our analysis here, we again refer to the mileage indicated in the Town's Statement of Undisputed Material Facts.

allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and to give the non-moving party the benefit of all reasonable doubts and inferences. Id. (citations omitted). These standards guide our decision below.

The Town contends that it is entitled to favorable judgment on a majority of the legal issues Appellants raise in their two Statements of Questions and a few of the legal issues that the Town raises in its own Statement of Questions.[4] The Questions for which the Town seeks summary judgment speak to the scope of review available to the ZBA and Commission in its evaluation of the Town's proposed trail system. In short, the Town asserts that the ZBA and Commission are limited in terms of what aspects of the Town's proposed trail system they can review, and what conditions they can impose, because, the Town argues, the trail system is a public facility. Appellants argue that there are no limitations upon site plan or conditional use review for municipal-owned projects and that the ZBA and Commission should have completed full reviews of each of the Town's applications.

## I.      Appellants' Question 1 (Docket Nos. 98-5-08 and 58-4-10 Vtec)

Question 1 in both of Appellants' Statements of Questions raises one of the core issues in these consolidated appeals—whether the Town's proposed trail system falls under the definition of public facility in § 4.15 of the Town of Charlotte Land Use Regulations ("Bylaws"). If the trail system is a public facility, § 4.15 restricts the aspects of the proposed project that can be regulated:

> In accordance with the Act [§4413(a)], the following <u>public facilities</u> are subject to conditional use approval under Section 5.4, and site plan review under Section 5.5, but <u>may be regulated under these review proceedings only with respect to</u> location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities, traffic, noise, lighting, landscaping and screening requirements.

Bylaws § 4.15 (emphasis added; brackets in original) (referring to a table titled "Table 4.2 Public Facilities" with a column labeled "facility" that includes the entry "state or community owned and operated institutions and facilities [see Public Facility]").

Section 4413(a), to which § 4.15 refers, limits a municipality's authority to establish bylaws regulating aspects of selected land uses. See 24 V.S.A. § 4413(a). Section 4413(a) identifies the land uses that are entitled to limited regulation, and specifically lists which aspects of a proposed project can be regulated:

---

[4]  The Town seeks summary judgment on Appellants' Questions 1, 2, 4–6, and 8–12 from Docket No. 98-5-08 Vtec and 1–3, 5–7, and 9–12 for Docket No. 58-4-10 Vtec. The Town also seeks summary judgment on its own Questions 1, 3, 6, and 7 from Docket No. 58-4-10 Vtec.

The following uses may only be regulated with respect to location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements, and only to the extent that regulations do not have the effect of interfering with the intended functional use:

(1) State- or community-owned and operated institutions and facilities.

(2) Public and private schools and other educational institutions certified by the state department of education.

(3) Churches and other places of worship, convents, and parish houses.

(4) Public and private hospitals.

(5) Regional solid waste management facilities certified under 10 V.S.A. chapter 159.

(6) Hazardous waste management facilities for which a notice of intent to construct has been received under 10 V.S.A. § 6606a.

Id. (emphasis added).

The question raised by Appellants is whether the Town's proposed trail system is entitled to limited review by the ZBA and Commission by way of § 4.15.[5] The Town argues that the trail system is owned by the Town and thus falls both within the definition of public facility in § 4.15 and the definition of community-owned and operated facility in both § 4.15 and 24 V.S.A. § 4413. Appellants do not dispute that the trail system is owned by the Town, but do dispute the Town's legal conclusion; Appellants argue that the phrase "community-owned and operated" refers to private ownership by a group of people or entities and not public ownership by a municipality.

When interpreting both statutes and municipal bylaws, we are directed to give effect to the intent of the relevant legislative body; to do this we turn first to the ordinary meaning of the plain language from the statute or bylaw. See Town of Killington v. State, 172 Vt. 182, 188 (2001); In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991). If we cannot identify an ordinary meaning because the language is unclear or ambiguous, or if applying the ordinary meaning makes the statute or bylaw ineffective or leads to irrational results, we seek other sources to help us ascertain the legislative intent. See In re Susan P, 169 Vt. 252, 262 (1999); Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129; Town of Killington, 172 Vt. at 189. Such sources include the legislative history of the law; its subject matter, effects, and purpose; and the language of the larger statute or bylaw. See Susan P, 169 Vt. at 262; Delta Psi Fraternity, 2008 VT ¶ 7; Town of Killington, 172 Vt.

---

[5] We recognize that the ZBA and the Commission are agencies within the Town government; however, these municipal panels are separate entities who undertake a quasi-judicial function when they review project proposals submitted by the Town. The Town is acting in an executive capacity when it submits such land use proposals. Thus, the Town's proposals do not receive a different kind of review than that of any other land use applicant, absent state statutory provisions or Town regulations providing for differences.

at 189.  Additionally, we defer to an administrative agency's interpretation of ambiguous language in a statute or bylaw that the agency is responsible for administering, if the statute or bylaw is within the agency's area of expertise and there is no "compelling indication of error."  In re Duncan, 155 Vt. 402, 408 (1990) (citations omitted); see In re Smith, 169 Vt. 162, 169 (1999).

While the Town argues that § 4.15 alone can provide an answer to Appellants' Question 1, we disagree.  The plain language of § 4.15 suggests that § 4.15 is meant to be a codification of 24 V.S.A. § 4413, rather than an extension of its scheme.  Section 4.15 begins "[i]n accordance with the Act [§4413(a)]" and uses almost identical phrasing as § 4413 in its list of land uses that receive limited review, including "state or community owned and operated institutions and facilities [see Public Facility]."  Section 4.15 does not stipulate that any additional types of land uses are entitled to limited review, and it also recites the same regulatory restrictions as § 4413, without any additions.

The only pertinent way in which Bylaws § 4.15 differs from 24 V.S.A. § 4413 is in § 4.15's incorporation of the term public facilities to collectively refer to all of the listed land uses and in its, somewhat confusing, use of the same term to define what state or community owned and operated means.  Because we interpret § 4.15 as essentially codifying § 4413 rather than going beyond its scope, we do not look to the Bylaws' definition of public facility, or to the ZBA and Commission's interpretation of § 4.15, as an independent source for determining whether the Town's proposed trail system is subject to limited review.  Instead, we turn to construction of the statute itself.

As directed by our Supreme Court, we look first to the plain language of § 4413 to determine whether the phrase "community-owned and operated institutions and facilities" includes the proposed municipal-owned trail system.  The ordinary meaning of the term "facility" is clearly broad enough to include an outdoor recreational trail system of the type proposed by the Town, and Appellants do not dispute that the term "facility" includes the proposal before us.  The parties instead disagree about what "community" means in the phrase "state- or community-owned and operated."

Title 24 of the Vermont Statutes Annotated does not define "community," but the ordinary meaning of the term is broad enough to include municipalities as a type of community.  The word "community" does not implicate merely private groups, as Appellants seek to persuade the Court, but instead encompasses both privately and publicly organized groups.  The definition of "community" in Black's Law Dictionary provides support for this conclusion via its use of terms that implicate public groups, such as "society or group of people with similar rights or interests," and "[j]oint ownership, possession, or participation."  (9th ed. 2009) (defining community as "1. A neighborhood, vicinity, or locality. 2. A society or group of people with similar rights or interests. 3. Joint ownership, possession, or participation.").

5

Additionally, to apply Appellants' interpretation would lead to an irrational result: the same outdoor recreational trail system proposed by the Town, if it were instead owned and operated by a private group, might qualify for limited review under 24 V.S.A. § 4413 and Bylaws § 4.15, but here, where it is owned and operated by the Town, would not. It is more likely that the Legislature used the broad term "community" in § 4413 to provide for limited review of some privately-owned and operated institutions and facilities in addition to municipal-owned and operated ones rather than to exclude municipal-owned and operated ones from the types of land uses entitled to limited review.

We conclude that the phrase "community-owned and operated institutions and facilities" unambiguously includes the Town's proposed trail system,[6] even when viewing the facts in a light most favorable to Appellants as the non-moving party. Thus, the Town's proposal is entitled to limited review under 24 V.S.A. § 4413 and, by extension, Bylaws § 4.15. We therefore **GRANT** the Town summary judgment as to Appellants' Question 1 in Appellants' Statement of Questions in both appeals.

## II.      Appellants' Questions 2, 4–6, 8–12 (Docket No. 98-5-08 Vtec) and 2, 3, 5–7, 9–12 (Docket No. 58-4-10 Vtec)

Having answered Appellants' Question 1 from both Dockets in the affirmative, determining that the Town's proposed trail system is entitled to limited review under both 24 V.S.A. § 4413 and Bylaws § 4.15, we now take up Appellants' Questions that implicate how these limitations apply to the conditional use and site plan review of the Town's proposal. Appellants' Questions on which the Town seeks summary judgment are the following, as taken from Appellants' Statement of Questions for Docket No. 98-5-08 Vtec, the conditional use appeal:

2. Is the proposed parking lot properly sized and situated? . . .

4. Should dogs accompanying users of the trail system be required to be leashed so that there is no danger that they will worry, harass and/or annoy farm animals kept in close proximity to the trail system?

5. To what extent is Appellee required to contribute to the maintenance expense of Plouffe Lane?

6. Do the proposed recreational trail system and parking lot interfere with and/or adversely affect critical wildlife habitat and/or a deer yard? . . .

8. What impact will increased traffic on Plouffe Lane have on agricultural use on the adjoining [Appellant] property?

9. What impact will increased traffic and/or the necessary widening of Plouffe Lane have on critical wildlife habitat and wildlife corridors?

---

[6]  Because we find the quoted language of 24 V.S.A. § 4413 unambiguous, we need not consider whether we should defer to the ZBA and Commission's interpretation of § 4413.

10. Will the widening of Plouffe Lane conflict with the Charlotte Planning Commission and Appellants' intent to keep the farm/wildlife areas adjacent to it as undisturbed as possible?

11. Is the Planning Commission's review limited solely to assessing and approving the parking lot for size and safe on site vehicular and non-vehicular circulation?

12. How will the parking lot and trail system be monitored to ascertain that they are not being used after dark?

Statement of Questions, filed June 16, 2008 in Docket No. 98-5-08 Vtec.

These Questions are identical to those presented in Appellants' Statement of Questions in Docket No. 58-4-10 Vtec, the site plan appeal, except that Question 11 above is only in Appellants' 2008 filing and the 2010 filing includes one additional Question: "are the proposed trails properly situated?" Statement of Questions ¶ 3, filed May 5, 2010 in Docket No. 54-4-10 Vtec. We review these individual Questions in turn.

Before we analyze the individual Questions, it is important to review two general legal issues: the purpose or rationale for limiting review of a public facility proposal, and the origins and proper definition for the authority to regulate the "location" of a proposed public facility.

Zoning represents our most established measure for limiting the use of one's property. Thus, while properly-enacted zoning regulations enjoy a presumption of validity, we are cautioned to strictly interpret zoning regulations, since zoning is regarded as being "in derogation of private property rights." Galanes v. Town of Brattleboro, 136 Vt. 235, 240 (1978) (citing Town of Milton v. LeClaire, 129 Vt. 495, 499 (1971)); In re Wiley, 120 Vt. 359, 365 (1958). We apply these directives as we interpret 24 V.S.A. § 4413 and Bylaws § 4.15.

Our Legislature has placed restrictions on a municipality's authority to regulate select land uses, including those deemed to be state- or community-owned and operated facilities. See 24 V.S.A. § 4413(a). We have already addressed what is meant by this phrase (that it includes municipal-owned and operated facilities); we now speak briefly to why such public facilities enjoy less scrutiny than do other land developments and examine what this lesser scrutiny means in terms of restrictions upon what a municipality can apply to these facilities via its zoning regulations.

In a case involving the application of a prior version of 24 V.S.A. § 4413(a) (previously codified as 24 V.S.A. § 4409(a)), to a state-owned facility, our Supreme Court noted that such cases present a unique conflict between a municipality's zoning power to regulate land use within its boundaries and the state's sovereign authority to determine the use of its land. See In re Dep't of State Bldgs. & Gen. Servs., 2003 VT 92, ¶ 13, 176 Vt. 41 (citing Morse v. Vt. Div. of State Bldgs., 136 Vt. 253, 256 (1978) and Vt. Div. of State Bldgs. v. Town of Castleton Bd. of Adjustment, 138

Vt. 250, 258 (1980)). While the appeals before us concern municipal, not state, facilities, we recognize an appropriate analogy, given that Vermont municipalities are creations and subdivisions of the state. See Richards v. Town of Norwich, 169 Vt. 44, 47 (1999). Here, there is tension between the municipal panel's zoning authority and the sovereign authority of the municipality, as a land owner, to direct the use of its own land.

Partially as a means of resolving this tension, public facilities, including municipal-owned and operated facilities, enjoy a limitation upon the restrictions that a municipality's zoning regulations can impose upon them. See 24 V.S.A. § 4413(a). This limitation applies to all municipalities choosing to enact zoning regulations, and the Town here has also chosen to incorporate the language from the statutory limitation into its Bylaws, via § 4.15. We therefore conclude that the Town may only enact limited zoning restrictions on public facilities, including the Town's proposed trail system. Thus, in our review of the legal issues preserved in these appeals, we only apply those restrictions in the Bylaws' conditional use and site plan regulations that regulate "location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements." 24 V.S.A. § 4413(a).

We must acknowledge a further limitation upon the Town's regulation of state- or community-owned and operated facilities. Both § 4413(a) and Bylaws § 4.15 also state that municipalities can regulate these facilities "only to the extent that [the municipal land use] regulations do not have the effect of interfering with the intended functional use" of the proposed facility. Thus, to the extent that the Bylaws establish restrictions pursuant to land use aspects listed in § 4413(a), even those Bylaws must be disregarded if it is concluded that such restrictions "interfer[e] with the intended functional use" of the proposed public facility. See 24 V.S.A. § 4413(a).

Turning to the second issue we must address before analyzing the individual Questions on appeal, we look at the specific land use aspects that municipalities are limited to regulating for public facilities. These are defined in the enabling statute and Bylaws with fairly straight-forward language, such as size, height, setbacks, etc. Id.; Bylaws § 4.15. But one term that appears to be straight-forward has, in fact, a somewhat tortured history and is ambiguous in meaning: that term is "location." Does it mean the locations of the various components within the project site, as Appellants here suggest, or is it limited to the general location of the project within a municipality, as the Town here suggests? Thankfully, the precedent from our Supreme Court, cited above, provides

8

direction as to the Legislature's intent that clearly points to the proper interpretation: the term relates only to general location, as the Town suggests.

In Dep't of State Bldgs. & Gen. Servs., the Supreme Court in 2003 summarized the history that the term "location" has had in relation to zoning regulation of public facilities. 2003 VT 92.[7] A prior iteration of § 4413(a) (which was then codified as § 4409(a)), did not even have a reference to "location" in it. Dep't. of State Bldgs. & Gen. Servs., 2003 VT 92, ¶ 15. A 1972 amendment added the language concerning "location," but the phrasing of the new language ultimately caused more confusion than clarity.[8] See Id.; 1972, No. 257 (Adj. Sess.), § 12 eff. April 11, 1972. To aid its interpretation, the Supreme Court looked to testimony given during the 1972 Senate debate of the bill that added the "location" language. Id. ¶¶ 16–17. The Supreme Court concluded that because the testimony was offered by the chief sponsor of the bill (then Representative Edward T. Crane) and its draftsperson (Bernard Johnson from the State Planning Office), it was weighty evidence of legislative intent, particularly since the testimony spoke directly to such intent and was not contradicted. Id. With this uncontradicted legislative history before it, the Supreme Court concluded that the "location" reference "merely added location to the already enumerated list of regulable aspects."[9] Id. ¶ 17.

Referring to this same legislative history, we conclude that the Legislature's intent in using the term "location" was to give municipalities the ability to regulate the general location of public facilities, but not the specific siting of improvements within the project site. In speaking to the Senate Natural Resources Committee about the addition of the term location, Mr. Johnson stated the following: "This wording was added to give a town the opportunity to regulate the location of such things as certain public utilities and other kinds of things that are listed. . . . The philosophy has been up to this point that they should be regulated in terms of all things with the exception of their location in a community." Dep't. of State Bldgs. & Gen. Servs., 2003 VT 92, ¶ 16 (quoting testimony of Bernard Johnson on H.80 to Senate Natural Resources Committee, at 20 (Feb. 2, 1972)). Appellants

---

[7] It is helpful to note that what is now 24 V.S.A. § 4413(a) was, in 2003, codified as 24 V.S.A. § 4409(a) and was repositioned as § 4413(a) during the general reorganization of the municipal and regional planning and development provisions in the Vermont Statutes Annotated (Chapter 117 of Title 24). See Consolidated Environmental Appeals and Revisions of Land Use Development, 2004, No. 115 (Adj. Sess.).

[8] This phrasing added via the amendment was "[u]nless reasonable provision is made for the location of any of the following in a bylaw . . . the following uses may only be regulated with respect to size, height, bulk, [etc.] . . . ." See 24 V.S.A. § 4409(a) (2000).

[9] Following the Supreme Court decision in Dep't of State Bldgs. & Gen. Servs., the Legislature amended § 4409(a), now § 4413(a), to list "location" alongside the other regulable aspects. See Consolidated Environmental Appeals and Revisions of Land Use Development, 2004, No. 115 (Adj. Sess.) § 4413.

offer no conflicting authority, and we find Mr. Johnson's testimony, as cited by the Supreme Court, convincing that location refers only to the general location within a municipality.

Finally, we must acknowledge the general purpose of 24 V.S.A. § 4413 and its sister provisions: 24 V.S.A. § 4411 (relating to the general authority to enact zoning regulations) and § 4412 (relating to the required provisions and prohibited effects, if a municipality chooses to enact zoning regulations). These statutory provisions form the foundation for a municipality's authority to enact zoning regulations; if a municipality chooses to enact zoning, it must abide by these provisions, including the limitations imposed by § 4413(a). The Town here has chosen to enact zoning and regulate public facilities by enacting Bylaws § 4.15; therefore the Town must abide by § 4413(a).

In our review of the conditional use and site plan determinations preserved for our review in these appeals, we thus look specifically to the Town's conditional use regulations (Bylaws § 5.4) and the site plan regulations (Bylaws § 5.5) to determine whether such regulations relate to "location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements." 24 V.S.A. § 4413(a); Bylaws § 4.15. If they do not, in other words, if the Questions presented do not correlate to Town regulations that relate to aspects listed in § 4413(a), the Questions are beyond the scope of the Town's enabling authority. They are also, thus, beyond the scope of our jurisdiction to address. See In re Torres, 154 Vt. 233, 236 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader. . . . [W]hatever the Zoning Board of Adjustment of Planning Commission might have done with an application probably before it, the Superior Court may also do if an appeal is duly perfected."). Consequently, we must decline to review such Questions in these appeals and render summary judgment in favor of the Town.

For the reasons stated below, we conclude that most Questions are beyond the scope of the Town's enabling authority and therefore summarily **DISMISS** those Questions; for some of the remaining Questions, we conclude that the legal issues posed are jurisdictionally appropriate for our review but are so fact-dependent that we cannot render a summary determination at this time. We **GRANT** the Town summary judgment on one of the remaining Questions Appellants pose.

## A. Is proposed parking lot properly sized and situated?

Question 2 from both Dockets, quoted above at page 6, pertains to the size and situation of the proposed parking lot in the Town's proposed trail system. This Question is easily addressed, since parking is a specific component of a proposed public facility that a municipality is authorized to regulate under § 4413(a). Looking to the Town Bylaws, we note that Bylaws § 5.5(E)(4)

10

establishes standards to be considered in the site plan review process in relation to "Parking, Loading and Service Areas." However, we also note that the conditional use provisions of Bylaws § 5.4 have no standards applicable to parking.

We caution the parties that our review of the proposed parking area will be limited to the specific site plan standards listed or referenced in Bylaws § 5.5(E)(4); we will not allow a broad-based review of the parking plan and its possible impacts, but only look to the specific standards specified in the Bylaws. With this limitation in mind, we conclude that review of the proposed parking area is authorized under Bylaws § 5.5(E)(4) and therefore **DENY** summary judgment on Question 2 from Docket No. 58-4-10 Vtec. However, since this municipality appears to have chosen not to enact conditional use review provisions that relate to parking areas, we must **DISMISS** Question 2 from the conditional use appeal (Docket 98-5-08 Vtec).

### B. Are the proposed trails properly situated?

Appellants seek by their Question 3 in Docket No. 58-4-10 Vtec a determination of whether the proposed trails are "properly situated." From Appellants pleadings and memoranda, we understand this Question to challenge the layout of the trails as they are located on the project site, and not the general location of the trails within the Town. For the reasons detailed in our discussion above, we decline to review how the trails are situated within the project site, since 24 V.S.A. § 4413(a) does not authorize that type of regulation of public facilities. We therefore **DIMISS** Question 3 in the site plan appeal (Docket No. 58-4-10 Vtec).

### C. Should trail users be required to leash their dogs?

Question 4 from the conditional use appeal (Docket No. 98-5-08 Vtec), which is mirrored in Question 5 from the site plan appeal (Docket No. 58-4-10 Vtec), queries whether dog owners using the proposed trails should be required to leash their dogs to prevent the disturbance of nearby neighbors and animals. This Question differs from the Questions discussed above because it asks the Court to impose a specific condition on the Town—that all trail users with dogs must leash them. While Appellants concern appears reasonable and possibly legitimate, our analysis here must focus first on whether such regulation is authorized. We interpret Appellants' concern to be the possible impact of the proposed development upon area farms animals, wildlife, and neighbors and their domestic animals. But § 4413(a) provides no authorization to regulate such impacts. Even when viewing the facts presented in a light most favorable to Appellants, the nexus between leashed or unleashed dogs and the regulation authorized by § 4413(a) appear beyond tenuous. Consequently,

11

we **GRANT** the Town summary judgment on Appellants' Question 4 from Docket No. 98-5-08 Vtec and Question 5 from Docket No. 58-4-10 Vtec.

**D. Should the Town be required to contribute to Plouffe Lane maintenance expenses?**

Turning now to Question 5 from the conditional use appeal (Docket No. 98-5-08 Vtec), which is mirrored in Question 6 from the site plan appeal (Docket No. 58-4-10 Vtec), we consider the legal issue of whether the Town, as a condition of any approval this Court may grant, can be required to contribute to the maintenance expenses for the private road known as Plouffe Lane. Some context is in order here. Plouffe Lane is a private roadway which travels over part of the land owned by the Town, specifically over the 60-foot wide strip of land that connects Carpenter Road to the larger portion of the Town's parcel. The project site and this private roadway appear on a site map that the Town attached to its application, titled "Plouffe Lane Trailhead, Charlotte, Vermont"; a copy of that site map is attached to this Decision for the readers' reference. In fact, it appears that there may be two private roadways at issue here, the first being Plouffe Lane, which is located entirely on the 60-foot wide strip of Town-owned land, and the second being another private road that spurs off from Plouffe Lane approximately 200 to 250 feet below (southerly) of the Lane's entrance onto the larger portion of the Town's parcel.[10] For purposes of this discussion, we assume that Appellants are recommending that the Town contribute to the maintenance expenses of either or both of these private roadways.

Three or more homes are served by these private roadways. Most or all of these property owners hold easements over the private roadways, and are required to contribute to the regular maintenance and upkeep of the private roadways.

Since they are private, the Town does not maintain these roadways as part of its regular highway maintenance. We also understand, from the record before us, that the Town does not presently contribute to the maintenance and upkeep of these private roadways. The record reveals that these roadways have been used for some time for public purposes, both to access the former landfill and the current stump dump. We know of no prior permit condition requiring the Town to contribute to the private roadway maintenance and upkeep expenses. To the extent that the Town or its Highway Department has voluntarily taken on maintenance or upkeep responsibilities, we have not been made aware of it.

It also appears from the record before us that the Town did not originally suggest in its application that any maintenance or upgrades be made to Plouffe Lane. Rather, based upon

---

[10] It is unclear from the attached map whether the private roadway that spurs from Plouffe Lane travels over the larger portion of the Town's parcel or over lands of abutting neighbors.

questioning during the Commission's review of applicable conditional review criteria concerning traffic (Bylaws § 5.4(C)(3)), the Commission imposed a condition requiring the Town to widen and make other improvements to Plouffe Lane.[11] We understand that in light of the Commission imposing a condition upon the Town to make certain improvements to Plouffe Lane, Appellants have presented the legal issue of whether the Town should also be required to contribute to "maintenance expense" of Plouffe Lane. We understand Appellants' request to include annual and customary maintenance and upkeep expenses for the private roadway, since it is not a public roadway and therefore maintained by its users and easement holders rather than the Town.

Section 4413(a) provides that a municipality may choose to regulate a public facility as to its traffic. Since this municipality has chosen to enact conditional use regulations concerning "traffic" (see Bylaws § 5.4(C)(3)), the traffic impacts of a proposed public facility is a proper inquiry. Turning to the Bylaws site plan provisions, they do not specifically mention "traffic" but do authorize the Commission to consider whether a proposed project includes provisions for "adequate and safe vehicle and pedestrian access to and from the site." Bylaws § 5.5(D)(3). Since the traffic to and from the proposed trail site will be over a private roadway, we regard "access" as a consideration that is allowable for a municipality to review under its consideration of "traffic" impacts of a proposed public facility, per § 4413(a).

While traffic impacts may be considered, and conditions may be imposed to assure no undue or adverse impacts from the traffic a proposed public project generates, we are unaware of the authority of any municipal land use panel, or this Court, to condition permit approval upon an applicant making payments to neighboring property owners, even if such payment is a contribution to roadway expenses. We presume, since we have not been made aware of any challenge, that the general public has the authority to travel upon the Plouffe Lane portion of the Town's land parcel. Applicants' request that the Court impose a condition upon the Town, as part of any approval of its trails, that the Town contribute to annual and on-going roadway maintenance expenses, would require this Court to travel well beyond its jurisdictional limits, both by adjudicating whether the Town should make such payments, and at what rate.

We decline to adjudicate possible real property disputes; that is the province of the Civil Division of the Superior Court. Once an applicant satisfies a threshold burden that it has authority to

---

[11] The Commission refers to this private roadway as "Plouffe Farm Lane," although it appears clear from its decision that it is referring to the private roadway that travels over the 60-foot wide strip of land that the Town owns. We understand this portion of the private roadway to be Plouffe Lane. We invite correction from the parties.

The Town challenged this very condition in Questions 4 and 5 to its Statement of Questions, filed July 21, 2010 in Docket No. 58-4-10 Vtec; the Town's Questions 4 and 5 remain unresolved by this Decision and will therefore be addressed at trial.

use the property it seeks to develop, our jurisdictional inquiry of property ownership ends. <u>In re Leiter Subdivision Permit</u>, No. 85-4-07 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. Jan. 2, 2008) (Durkin, J.). The undisputed facts before us are that the Town owns the land over which this private roadway travels; that the roadway has served as access for private homes, the current stump dump, and a former landfill; and that the private home owners are obligated to contribute to the maintenance and upkeep of the roadway. Appellants would have us adjudicate a dispute concerning the rights and responsibilities between owners of private property, a dispute we do not have the authority to adjudicate. We decline to address this legal issue and therefore summarily **DISMISS** Appellants' Question 5 from Docket No. 98-5-08 Vtec and Question 6 from Docket No. 58-4-10 Vtec.

### E. Adverse impact upon wildlife and agricultural uses.

Questions 6 and 9 from the conditional use appeal (Docket No. 98-5-08 Vtec) express a concern that the proposed trails, parking lot, widening of Plouffe Lane, and any associated traffic may have an adverse impact upon nearby wildlife habitat, feeding areas, and corridors. Question 8 asks about the project's impacts on Appellants' agricultural use of their property. These Questions are mirrored in Questions 7, 10, and 9, respectively, from the site plan appeal (Docket No. 58-4-10 Vtec).

These three Questions neither relate directly to the land use aspects listed in § 4413(a) nor seek the imposition of specific conditions that could arguable relate to regulable aspects; instead they ask generally about impacts on nearby wildlife and agricultural uses. For the reasons stated below, we conclude that these Questions must be **DISMISSED**.

We must ask whether the ZBA and Commission had authority to inquire about the impact of the proposed trails and related improvements upon nearby wildlife and agricultural operations; if the ZBA or Commission could make such inquiries, then this Court has the authority to do so on appeal. See <u>Torres</u>, 154 Vt. at 236.

The limitations imposed through 24 V.S.A. § 4413(a) do not specifically authorize a municipal land use panel to inquire about a public facility's possible impact upon nearby wildlife or agricultural uses. Since we must respect the province of our Legislature to impose such limitations, and because we find no express statutory authorization for a municipality to enact land use regulations limiting a public facility's impact upon wildlife or agricultural uses, we conclude that Questions 6, 8 and 9 from the conditional use appeal (Docket No. 98-5-08 Vtec) and Questions 7, 9 and 10 from the site plan appeal (Docket No. 58-4-10 Vtec) must be **DISMISSED**.

Question 10 from Docket No. 98-5-08 Vtec (and Question 11 from Docket No. 58-4-10 Vtec) appears similar to Questions 6, 8, and 9 in that it suggests that this Court inquire about whether the

14

widening of Plouffe Lane contradicts a collective intent "to keep the farm/wildlife areas adjacent to [Plouffe Lane] as undisturbed as possible." Since the laws enabling a town to regulate public facilities do not specifically authorize a review of the public facilities' impact on wildlife or agriculture, the ZBA and Commission did not have that authority in the first instance, and this Court does not have such authority on appeal. We therefore **DISMISS** Question 10 from the conditional use appeal (Docket No. 98-5-08 Vtec) and Question 11 from the site plan appeal (Docket No. 58-4-10 Vtec).

## F. Scope of review of trail head parking lot.

Question 11 from the conditional use review appeal (Docket No. 98-5-08 Vtec) asks whether the review of the proposed parking lot is limited to a review of its "size and on site vehicular and non-vehicular circulation."[12] Pursuant to 24 V.S.A. § 4413(a) and Bylaws § 4.15, this Court's review of the proposed parking lot is limited to its "location, size, height, building bulk, yards, courts, setbacks, density of buildings, off-street parking, loading facilities, traffic, noise, lighting, landscaping, and screening requirements." We note, however, that the Bylaws' provisions relating to conditional use review, Bylaws § 5.4, do not speak to review of parking or access; those considerations are left to site plan review within Bylaws §§ 5.5(D)(3) and (4). Since this Question is posed only in the conditional use appeal, we reply to the Question by stating that no review of the proposed parking lot is authorized in connection with the conditional use application. Question 11 from the conditional use appeal (Docket No. 98-5-08 Vtec) is therefore **DISMISSED**.

## G. How will the trails and parking lot be monitored after dark?

Appellants' final Question, Question 12 in both Dockets, asks how the proposed trail system and parking lot will be monitored after dark. We understand that Appellants propose by this Question that there should be some monitoring or restriction of the trail usage after dark, thereby raising the "scope" of the trail operations. Perhaps Appellants' concern is premised upon the level of noise that will emanate from the trails if they are allowed to be used after normal business hours. Section § 4413(a) authorizes regulation of the scope and noise of public facilities, and this municipality has chosen to enact both conditional use and site plan review criteria in relation to scope and noise. Since the Town has not provided specific material facts as to the scope and noise attributes of its trail operations, we must **DENY** the Town summary judgment on Appellants'

---

[12] This Question appears to contain a typographical error, as it asks about the "Planning Commission's review." We note that Docket No. 98-5-08 Vtec is an appeal from the conditional use determination issued by the ZBA. We therefore assume that Question 11 asks about the scope of conditional use review, and not site plan review. If we are incorrect in this assumption, we expect that Appellants' counsel will advise the Court.

Question 12 from both Dockets and await the presentation of evidence at trial as to whether and how the trail system will be monitored or restricted after dark.

### III. Town's Questions 1, 3, 6, 7 from site plan appeal (Docket No. 58-4-10 Vtec)

The Town also seeks summary judgment on four of its own Questions submitted in connection with its cross-appeal that pertain to limitations on the Commission's review of the Town's site plan for its proposed trail system. These Questions are as follows:

1. Is the Site Plan Decision Finding of Fact ¶ 27 beyond the scope of Site Plan Review and beyond the scope of permissible review under 24 V.S.A.§ 4413(a) for a public facility such as that proposed here, such that the Applicant is not bound by it? . . .

3. Is Site Plan Decision Finding of Fact ¶ 41 beyond the scope of 24 V.S.A. § 4413(a) such that the Applicant should not be bound by it? . . .

6. Is screening of the trail head parking area required by Site Plan Decision Condition ¶ 2 unnecessary under the applicable Land Use & Development Regulations, where the parking area does not constitute unsightly or incompatible development?

7. Is signage unrelated to subjects specified in 24 V.S.A. § 4413(a) beyond the permissible scope of regulation for a public facility and, if so, should the Site Plan Decision Conditions 3, 6, and 9 be eliminated?

Statement of Questions, filed July 21, 2010 in Docket No. 58-4-10 Vtec.

#### A. Challenges to Commission's factual findings.

Questions 1 and 3 ask about whether the Commission could make findings of fact relating to the leashing of dogs (Finding #27) and certain standards and conditions (Finding #41). Because the proceedings before this Court are de novo, the Court will be looking anew at the evidence presented at trial and making its own findings of fact. See 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g). In fact, this de novo standard of review has been interpreted, at least as to the issues preserved by the appeal, to have the same effect as if "no decision had been previously rendered" by the Commission. In re Entergy Nuclear Vermont Yankee Discharge permit 3-1199, 2009 VT 124, ¶ 54. Consequently, we regard these challenged Findings as **VOID**, by virtue of the appeal and cross-appeals filed in this Docket.

We have already spoken above to the propriety of a dog leashing condition, given the limitation on the municipality's authority to regulate this public facility; we find no authority to entertain such a condition in this proceeding. Given that we have determined that Finding #41 is void by virtue of the pending appeal, we will consider and render our own determinations on the site plan standards that are allowable under 24 V.S.A. § 4413(a) and Bylaws § 4.15: site access (Bylaws

16

§ 5.5(D)(3)); site parking (Bylaws § 5.5(D)(4)); and site landscaping and screening (Bylaws § 5.5(D)(5)). Thus, while we hereby **VOID** the Findings challenged by the Town in its Questions 1 and 3, and **DIMISS** those Questions; we shall render our own factual determinations, based upon the evidence presented at trial and subject to the limitations outlined in this Decision.

**B. Condition requiring screening of trail head parking lot.**

The Town, by its Question 6, inquires whether it can be required to plant enough native vegetation to screen the view of the parking area from neighboring properties. From the Commission's findings of fact, it appears the Commission imposed the planting condition in conjunction with Bylaws § 5.5(D)(5), which is a site plan review criterion addressing landscaping and screening. Turning to this criterion, it states that "[l]andscaping and screening may be required in appropriate locations on the site as necessary to physically or visually separate and buffer incompatible land uses or densities of development or to screen incompatible or unsightly development from public rights-of-way and neighboring properties and uses." The Town argues that it has put forth uncontroverted facts showing that its development is not incompatible or unsightly. Since at this stage of these proceedings we are directed to read all reasonable doubts and inferences in Appellants' favor, as the non-moving parties, we cannot determine at this juncture that under no circumstances may a screening condition be imposed. Appellants have presented their multiple concerns in regards to screening; the Court has yet to receive evidence, conduct a site visit to put that evidence in context, or make its own factual findings. For all these reasons, we must **DENY** the Town summary judgment on its Question 6.

**C. Conditions requiring additional signage.**

The Town's Question 7 asks whether 24 V.S.A. § 4413(a) restricts the ability of the Commission, and this Court by extension, from conditioning its approval on the Town installing more directional signs, including more trail markers, a sign at the trailhead and parking area, and signs along the border of the Town's property where it is adjacent to private land. While we do not now rule on the need for such conditions, we conclude that the Town has not provided material facts sufficient to conclusively show that in no instance will such additional signage will be necessary to render positive findings on site plan review criteria that relate to the regulable aspects listed in § 4413(a) such as noise, landscaping, and screening. Consequently, we **DENY** the Town summary judgment on its Question 7.

17

**Conclusion**

For all of the reasons more fully discussed above, we conclude that the Town's proposed trail system falls within the category of "community-owned and operated institutions and facilities" in 24 V.S.A. § 4413(a) and is thus entitled to limited review by the ZBA and Commission under both 24 V.S.A. § 4413 and Bylaws § 4.15. We therefore **GRANT** the Town summary judgment on Appellants' Question 1 from both Docket Nos. 98-5-08 Vtec and 58-4-10 Vtec. We also **GRANT** the Town summary judgment on Appellants' Question 4 from Docket No. 98-5-08 Vtec (the appeal from the ZBA conditional use determination) and Question 5 from Docket No. 58-4-10 Vtec (the appeal from the Commission site plan review determination).

We **DIMISS** Appellants' Questions 2, 5, 6, 8, 9, 10, and 11 from Docket No. 98-5-08 Vtec and Questions 3, 6, 7, 9, 10, and 11 from Docket No. 58-4-10 Vtec because they do not fall within our jurisdiction. Also, the Town's Questions 1 and 3 from Docket No. 58-4-10 Vtec are **DMISSED** because the Findings that those Questions challenge are **VOIDED** by virtue of this appeal and cross-appeal. We **DENY** the Town summary judgment on the remainder of the Questions on which the Town seeks such judgment.

The Court directs Appellants and the Town to prepare the following Questions for trial: Appellants' Questions 3, 7, and 12 from Docket No. 98-5-08 Vtec; Appellants' Questions 2, 4, 8, and 12 from Docket No. 58-4-10 Vtec; and the Town's Questions 2 and 4–7 from Docket No. 58-4-10 Vtec.

We remind the parties that the Town, as the applicant, bears the initial burden of production and the ultimate burden of persuasion at trial to show that its proposed trail system complies with the Bylaws conditional use and site plan review criteria, subject to the limitations imposed on those regulations by 24 V.S.A. § 4413(a) and Bylaws § 4.15. Appellants should also be prepared at trial to explain the relationship between the evidence they plan to submit and applicable criteria that remain for resolution by virtue of this Decision.

Done at Berlin, Vermont, this 14th day of February 2011.

 

_____
Thomas S. Durkin, Judge

18



Plouffe Lane Trailhead
Charlotte, Vermont

Location Map

Shelburne
SPEAR ST
Charlotte
PLOUFFE LN
LaPlatte River
DORSET ST
CARPENTER RD

Map by Brooke Scatchard
for the Charlotte Trails Committee
July 7, 2007

0  200  400  800  1,200  1,600  Feet

PLOUFFE FARM LN

LaPlatte River

DORSET S

GPS trail data collected by Brooke Scatchard.
GPS trail data accurate to within 3 meters.

## Legend

— Equestrian, Hiking, and Biking Trails

----- Hiking and Biking Trails

[H] Trail Signs

🚻 Benches at Scenic Overlooks

■ Parking Area

▢ Town Owned Land

— Roads

— Streams

— 100' Stream Buffer

■ Wetlands